JAMES ANTHONY BROWN AND CARL SHEPARD, JR. *v.* STATE OF MARYLAND

[No. 316, September Term, 1968.]

---

9. However, nothing contained in Art. 43, § 139 "shall be construed to apply to gratuitous services."

632

*Decided April 30, 1969.*

*Donald Rogers* for appellant Brown, and *Robert W. Baker* for appellant Shepard.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *David R. Eaton, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellants, James Anthony Brown and Carl Shepard, Jr., were convicted by Judge Meyer M. Cardin, sitting without a jury, in the Criminal Court of Baltimore, of the crimes of obtaining money by false pretenses and common law assault. Each was sentenced to concurrent terms of eighteen months and three years, respectively, under the jurisdiction of the Department of Correction. Appellant Brown was also convicted of the crime of petit larceny and was sentenced to eighteen months, concurrent, under the jurisdiction of the Department of Correction.

On this appeal appellant Brown contends that the evidence was insufficient to convict him of the crimes of obtaining money by false pretenses, common law assault, and petit larceny.

Appellant Shepard contends that the evidence was insufficient to convict him of common law assault.[1]

I

LARCENY AND FALSE PRETENSES— APPELLANT BROWN

The object of the larceny and the item involved in obtaining

---

1. Shepard did not appeal his conviction of obtaining money by false pretenses.

money by false pretenses was a check of the Treasurer of the United States, No. 94370099, dated March 7, 1968, payable to James Jackson, 1518 N. Washington Street, Baltimore, Md., in the sum of $24.00, and indorsed "James Jackson." On the check was the printed notation, "tax refund." This check was introduced at trial as State's Exhibit 1.

James Jackson testified that he lived at 1518 N. Washington Street, in Baltimore, Maryland, and that he had filed an income tax return and an application for a refund. He stated that he had a mail box where his mail was delivered but that he never received his refund check which should have been delivered on March 8th. He further testified that he first saw the check on March 28th when it was shown him by a police officer and that the indorsement on the back of the check in question was not his signature.

William E. Dorsey testified that he was the manager of the J. J. Denline Cut Rate Liquor Store, and that on March 8, 1968 appellants Brown and Shepard entered the store. Brown, who represented himself as "Jackson", stated that he wanted the check (State's Exhibit 1) cashed and that it was his tax refund. Although the check was indorsed when Brown brought it in, Mr. Dorsey was unwilling to cash it without sufficient identification from Brown. Brown stated that he had lost his wallet and had no identification. Mr. Dorsey, who knew Shepard, stated that if Shepard would co-sign the check, he (Dorsey) would cash it. Shepard said he knew Jackson, that the check was Jackson's, and that he would co-sign it. Brown attempted to indorse the check but was too intoxicated to complete it, and Shepard indorsed the check in the name of Jackson and then co-indorsed his own name thereon. Mr. Dorsey then cashed the check, took out for a half pint of whiskey, and gave Brown $21.75 in cash.

Appellant Brown testified that he spent the night of March 7, 1968 in an apartment on the first floor of the house at 1518 N. Washington Street. James Jackson lived in the second floor apartment of that building. The appellant (Brown) stated that at 9:00 a.m. the following morning, March 8, ". . . a boy came in and we got to drinking, having a party so to say. And about 11 o'clock another guy came in and picked a check up out of the hall and brought it in the house with him when he came in.

He thought it belonged to somebody in the apartment. The boy that the house belonged to took the check upstairs to the boy James Jackson but he wasn't home so he brought it back. To keep it for him until he came home. As we were sitting there drinking everybody got drunk. I guess about drunk. The boy that lives in the house said that he was leaving and gave me the check to give to Jackson when he came home. After we got drunk, the next thing I know I was in the cut-rate with the check." He also stated that he was drunk at the time he was in the liquor store and that he did not tell Mr. Dorsey anything but merely handed him the envelope with the check in it.

Appellant Brown contends that the evidence showed that he was too intoxicated to possess the requisite intent to commit the two crimes, and was thus insufficient to sustain the convictions.

This Court has stated that:

> "Where a particular motive, intent or purpose is an essential element of a crime, drunkenness may be considered in determining whether or not the accused lacked the mental capacity to form the requisite motive, intent, or purpose, and if a sufficient mental incapacity is found to exist drunkenness may constitute a defense to the particular offense charged."

*Michael v. State,* 1 Md. App. 243, 247 (1967). See also *Johnson v. State,* 5 Md. App. 540 (1968).

We went on to say, however, that:

> "He must persuade the triers of fact that, under the circumstances, he was so intoxicated as to be incapable of entertaining the specific mental intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted."

*Michael v. State, supra* at 248.

The trial judge was not required to believe appellant's assertion that the next thing he remembered after receiving possession of the check was being in the liquor store. *Johnson v. State, supra* at 544. Appellant could recollect everything that took

place prior to his trip to the liquor store as well as what took place at his mother's home later that afternoon. Moreover, he had sufficient mental capacity to realize that before the check could be cashed it must be indorsed, and therefore he and his co-defendant Shepard appeared at the store with the forged indorsement already on the check. There he represented himself to the manager as James Jackson, that the check was his tax refund, and that he was unable to produce identification because he had lost his wallet. While he appeared to be too intoxicated to indorse the check again in the store, the trial court could well have found that he had sufficient mental capacity to form the requisite intent required to commit the crimes of which he was convicted, and that his asserted failure to recollect what took place after he allegedly received the check and went to the store was fabricated. The credibility of the witnesses is for the trier of the facts. *Gunther v. State,* 4 Md. App. 181, 185 (1968). Under the evidence in this case we cannot say that the trial court could not draw a rational inference of the existence of the requisite intent or that he was clearly erroneous in drawing such a conclusion. Maryland Rule 1086.

Moreover, mental capacity to form the requisite intent being present, there was ample evidence from which the trial court could find that appellant was guilty of both the crime of petit larceny and the crime of obtaining money by false pretenses. *Reagan v. State,* 2 Md. App. 262, 269 (1967) ; *Gamble v. State,* 2 Md. App. 271, 275-76 (1967) ; *Keene v. State,* 2 Md. App. 325, 327 (1967) ; *Wharton's Criminal Law and Procedure,* Vol. 2, § 470 ; *Lockard v. State,* 3 Md. App. 580, 583 (1968).

## II

### ·ASSAULT—APPELLANT BROWN

At trial, Edward Scott testified that at 4:00 p.m. on March 8, 1967 he was visiting at 1512 N. Washington Street, where appellant Brown lived with his mother, sisters and brothers. Scott suggested to Brown that they buy something to drink. Brown gave him a dollar and Scott went out and purchased a half pint of whiskey. When he returned there was an argument over how the bottle was to be divided. At the conclusion of the argument Brown hit Scott on the back of the head with a

bottle. Scott denied that he had threatened or struck Brown before Brown hit him with the bottle.

Appellant Brown testified that "the fight started because earlier that day I gave Scott a dollar. He went to get some whiskey. Later on when he came back after we had drank the whiskey he ran his hand in my pocket and took some money out of my pocket. I thought he was playing and asked for the money back. He started laughing. Then when I grabbed him by the arm to get the money back he pushed me back, shoved me into the wall. On impulse I grabbed a bottle and I hit him with it because he was bigger than me." The bottle which Brown used was "one of them decorated bottles people set on their mantles" and was about the same size as a fifth bottle. Scott fell to the floor when Brown struck him and was still on the floor when Brown ran from the house.

Appellant Brown contends that the evidence shows that he took reasonable steps to defend against Scott's attack.

An assault predicated upon the doctrine of self-defense is justified only where the accused had reasonable grounds to believe and did believe that he was in apparent imminent peril of death or serious bodily harm from his actual or potential assailant. It is the task of the trier of facts to determine whether the accused was justified in meeting force with force. Upon finding such justification, the force used against the assailant must not have been unreasonable or excessive, that is, the defender must not have used more force than the exigency reasonably demanded. *Morris v. State,* 4 Md. App. 328, 332 (1968).

Appellant's introduction of a fifth-sized bottle into the affray and the use of it to bludgeon Scott to the floor clearly constitutes an exercise of greater force than was justified under the circumstances. The lower court found that appellant went beyond any reasonable attempt to protect himself when he used a bottle to strike Scott, and we agree. Therefore upon the instant record it cannot be said that the lower court was clearly erroneous in finding the appellant guilty of assault upon Scott. Maryland Rule 1086. See *Morris v. State, supra.*

## III

### ASSAULT—APPELLANT SHEPARD

Edward Scott testified that after he was struck by the bottle

wielded by Brown, Brown ran outside into an alley and he (Scott) pursued him. Scott caught Brown in the alley and both men fell to the ground. Six or seven other persons gathered in the alley and Scott was told to "get off" Brown. Scott arose and saw appellant Shepard standing next to him with a five-inch knife in his hand. As Scott started out of the alley, he was struck on the head with a heavy piece of wood by someone unknown, and was stabbed twice in the lower and middle back.

It was stipulated and agreed that the testimony of Willie Lee Hinton, who was absent from court on the day of trial, would be that while walking in the vicinity of the fight he met appellant Shepard and another person near the Brown house. The three saw a crowd of approximately 13-15 persons run into the alley. At no time did he see a knife in Shepard's hand, nor did Shepard have the opportunity to stab Scott, nor did Shepard stab Scott.

Officer Theodore Brown of the Baltimore City Police Department testified that he had arrested appellant Shepard, but that a search of Shepard revealed no knife and no blood on him or in his pocket. Officer Brown did not conduct a search of the area where the fight took place and made no effort other than searching Shepard to ascertain the location of the knife.

Appellant Shepard did not testify. He asserts on this appeal that the evidence was insufficient to convict.

The trial judge had before him testimony that appellant Shepard was in the alley at the time of the assault, that he was standing beside Scott with a five-inch knife in his hand, and that Scott was hit on the head with a "two by four" piece of wood and was stabbed in the back as he began to leave the alley. We believe that from these facts, from all the facts noted above, and from the proper inferences from such facts that the trial judge was not clearly erroneous in determining that appellant Shepard assaulted Scott or that appellant Shepard was a participant in the assault on Scott, or that he advocated, encouraged, aided or abetted in the assault. Any one of these findings would be sufficient to sustain the conviction. See *Coleman v. State,* 4 Md. App. 386 (1968) ; Maryland Rule 1086.

*Judgments affirmed.*