## RUSSELL JACKSON NICKERSON *v.* STATE OF MARYLAND

[No. 937, September Term, 1973.]

*Decided September 20, 1974.*

The cause was argued before POWERS, DAVIDSON and MOORE, JJ.

*R. Roland Brockmeyer, Assigned Public Defender,* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Richard Cooper, State's Attorney for Kent County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellant, Russell Jackson Nickerson, a Patrolman First Class with the Chestertown police department, was convicted of assault and battery and assault with intent to murder [1] by a jury in the Circuit Court for Kent County and was sentenced to a term of ten years, the final five to be suspended subject to probation. On appeal he contests the

---

1. At time of sentencing the court stated that the assault charge merged with the count of assault with intent to murder.

sufficiency of the evidence to support his convictions and claims error when the court

1) allowed a deputy sheriff to remain in the courtroom and testify in rebuttal after granting a motion to sequester witnesses;

2) permitted testimony with respect to the relationship between appellant and the wife of the prosecuting witness;

3) refused to grant an extension of time for the hearing on a motion for new trial filed by new counsel.

We deal first with appellant's challenge to the sufficiency of the evidence. It involves the twin contentions that appellant was acting in defense of his life, of lives entrusted to his protection, and of his property when he shot the victim, William Bramble, and that there was no evidence that he intended to shoot the victim when he fired the shot that struck him. These contentions are without merit.

Mr. Bramble, 23, an assistant dairy manager and an acquaintance of appellant for $2^1/2$-3 years previously, testified that at about midnight on September 23, 1973, following a conversation with his wife, he went to the home of Carolyn Folk on Flatland Road in Kent County, with whom Mr. Nickerson had been living for about one year. His reason for going there was "to get things straight immediately" concerning appellant's relationship with his wife. Bramble carried no gun with him but did have in the pickup truck he was driving a bow which he had used during the deer season.

As he pulled up into the driveway (some 200-300 feet in length) and stopped before the Folk residence he "tooted" the horn and "revved the motor up a little bit" aware that his muffler was "rather noisy." The headlights of the truck, on high beam, were directed at the house. He remained parked about a minute and a half and when nothing happened started to turn and leave, intending to go into town and talk to the sheriff. He then heard a shot fired and saw appellant in an upstairs window of the house. He approached the

house again, shining the handlight mounted on the truck toward the window, thinking that appellant "was just trying to scare somebody, and after he knew who it was then he would talk." He testified that he shouted his identity to appellant and "what the situation was" and that he wanted to talk to him. Appellant called down that he "[knew] no Buddy Bramble," that the stranger was "taking a terrible chance by coming up here," and "something to the order that he could shoot me, or finish me there if he wanted to." The witness in turn "told [appellant] . . . if he wouldn't talk to me that night, . . . that I would see him in court." According to Bramble, as he turned his truck around and was leaving, appellant fired four more shots at about three second intervals. In between the shots the witness "hollered back to [appellant] twice that he had missed, [still] thinking that he was only trying to scare me." The fifth and final shot penetrated the cab of the pickup truck and struck Mr. Bramble in the back of the neck, the bullet splitting and lodging both in his neck and below his tongue. When struck, his vehicle was near the end of the driveway, almost in the road.

Testifying in his own behalf, appellant stated that he had been living with Carolyn Folk and her three children in the Folk residence for approximately one year. His version of his conversation with Bramble differed sharply from the latter's: according to appellant, the intruder had refused to identify himself and responded to appellant's warning to leave the property with the words, "I am going to kill you." On cross-examination appellant conceded he had previously told a police officer only that he "thought" the victim had made this statement and was absolutely certain only that the latter had said, "I am going to take you to court" or words to that effect.

Appellant admitted firing several shots from his window but insisted they were meant strictly as a warning and were aimed away from the truck. He was handicapped, he testified, because he was shooting from a small space below the window screen and by the fact that he was forced to shoot with his left hand, since his right hand was bandaged

from an injury; and also because Carolyn, who was frightened and clinging to his right arm, may have deflected his aim.

Relevant to his state of mind that evening, appellant recounted several past incidents of "harassment and trouble" with his neighbors and of threats against him made directly or reported to him that had arisen out of his duties as a Chestertown policeman.

On cross-examination appellant admitted he had "had occasion to know [Bramble's] truck . . . two or three years" prior to the shooting. He conceded also that he had had sexual relations with Bramble's wife on two occasions during the summer of 1973 within two months of the shooting. A rebuttal witness for the State, Officer Antone, testified that on being informed by him immediately after the shooting that the victim was Buddy Bramble, appellant had stated: "I was afraid that's who it was."

The credibility of witnesses and the weight of the evidence are matters for the trier of fact. *Felder v. State,* 6 Md. App. 212, 250 A. 2d 666 (1969). The test of the legal sufficiency of the evidence, as repeatedly stated by this Court, is whether the evidence showed directly or supported a rational inference of the facts to be proved from which the trier of fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. *Williams and McCelland v. State,* 5 Md. App. 450, 247 A. 2d 731 (1968).

> "An assault predicated upon the doctrine of self-defense is justified only where the accused had reasonable grounds to believe and did believe *that he was in apparent imminent peril of death or serious bodily harm from his actual or potential assailant.* It is the task of the trier of facts to determine whether the accused was justified in meeting force with force. Upon finding such justification, the force used against the assailant must not have been unreasonable or excessive, that is, the defender must not have used more force than the exigency reasonably demanded." *Brown and*

*Shepard v. State*, 6 Md. App. 631, 252 A. 2d 887 (1969). (Emphasis added.)

Here, the court instructed the jury at length on the law of self-defense and counsel for appellant did not except to the instruction. The evidence, as we have reviewed it, abundantly supports a rational inference by the jury that appellant had no reasonable grounds to believe or did not in fact believe that he was in apparent imminent peril of death or serious bodily harm from Bramble when he fired at him and that his assault, therefore, was not justified. Crediting Bramble's testimony, as it was entitled to do, the jury could properly find either that Bramble never intended to do appellant harm in seeking him out on the night in question or at least that he presented no immediate threat to appellant's person and indeed was in the act of leaving the Folk property when appellant fired the shots in alleged self-defense. Equally unpersuasive is appellant's claim of necessity for the use of lethal force to repel an intruder to his — or Mrs. Folk's — habitation.[2] *See Law v. State*, 21 Md. App. 13, 318 A. 2d 859.

We find no merit, moreover, in the contention that there was insufficient evidence of an *intent* by appellant to injure Bramble.

> ". . . the intent with which a harmful act is done is usually not expressed in words, and the trier of facts is permitted to draw such inferences of intent as are warranted under all the circumstances of a particular case." *Bryant v. State*, 4 Md. App. 572, 578, 244 A. 2d 446 (1968).

One such circumstance, from which the malice necessary to support a charge of assault with intent to murder may be inferred, is the use of a deadly weapon, as is evidence that a deadly weapon such as a gun was pointed toward a human being and discharged in the general direction of that human being in a random fashion. *Woodard and Demby v. State*, 13

---

**2.** Appellant conceded that his ownership interest in the premises extended no further than to items of personalty located therein.

Md. App. 114, 282 A. 2d 9 (1971); *Mahoney v. State*, 13 Md. App. 105, 281 A. 2d 421 (1971). As stated in Clark & Marshall, *Crimes* (7th ed.) § 5.03:

> "If a person deliberately, and without ignorance of fact, shoots in the direction of another, it will be presumed that he intended to kill him, and he may be convicted of murder, or assault with intent to murder, according to the result."

For assault with intent to murder, a specific intent to murder is not necessary but only an intent to commit grievous bodily harm. *Lawrence v. State*, 2 Md. App. 736, 237 A. 2d 81 (1968).

The evidence clearly permitted a reasonable inference by the jury that appellant shot at Bramble with the intent to murder or grievously wound him. The jury was obviously not obliged to accept appellant's version of the shooting as accidental.

## II

Appellant contends that the court committed prejudicial error in permitting Deputy Sheriff Blizzard to testify for the State as a rebuttal witness, notwithstanding a sequestration order. When the request for exclusion of witnesses was made the State asked that the deputy sheriff be permitted to sit at counsel table during the trial. Defense counsel indicated he had no objection if the sheriff was not going to testify. The State replied that it had no intention to call the sheriff in its case in chief although it did not wish to "limit" itself. The court then asked:

> "Do you consider him the prime investigating officer? The one that you want to help you?
>
> Mr. Cooper: I have a prime investigating officer of three police departments. One of them in the Sheriff's Department —
>
> Judge Rasin: Well, it has always been the practice, and I am going to still follow it until told otherwise, to permit the State to have one person

> who is alleged to have been one of the overall chief investigation officers, with them through the trial of the case. So we'll permit Sheriff Blizzard to sit at the trial table with the State's Attorney. Note the objection of the Defense counsel, but it is overruled."

If the trial judge had in mind only that the sheriff would assist the State's Attorney in the conduct of the case, without testifying, then his ruling was, of course, within his discretion. Sheriff Blizzard was, however, permitted to testify over objection by defense counsel as the State's third witness in its case in chief and again on rebuttal. This constituted technical error.

We observe that while prior to the adoption of Md. Rule 737 (now Md. Rule 753) the exclusion of witnesses was within the sound discretion of the trial court, reviewable only upon an abuse of that discretion, the matter is now otherwise and the granting of a request to exclude witnesses is obligatory and no longer discretionary. *Swift v. State,* 224 Md. 300, 167 A. 2d 762 (1961). Rule 753 provides that in a criminal case the court *shall,* upon the request of a party, order the exclusion of witnesses. The only exception admitted pertains to an expert witness who is to render an opinion based on the testimony given at the trial.[3] No exception is provided for law enforcement officers. It is, to be sure, the practice in numerous jurisdictions that a detective or police officer assisting in preparing or presenting the case for the prosecution may remain at the counsel table with the prosecuting attorney even though it is expected that he will testify. *See* 23 C.J.S. § 1011 b, p. 1082. So far as we can ascertain, however, in every jurisdiction where this exemption prevails the exclusion of witnesses remains, as it no longer does in Maryland, within the

---

3. Rule 536 governs exclusion of witnesses in the trial of a civil case and authorizes an exception in the case of an expert witness and also a designated representative of a corporation which is a party. The corporate representative may remain in the courtroom "even though such representative may be a witness."

668

discretion of the trial court. *See United States v. Frazier,*[4] 417 F. 2d 1138 (4th Cir. 1969); *State v. Thomas,* 275 P. 2d 408 (Ariz. 1954); *People v. Adams,* 242 N.E.2d 167 (Ill. 1968); *Jordan v. People,* 393 P. 2d 745 (Colo. 1964); *Fountain v. State,* 185 S.E.2d 62 (Ga. 1971);[5] *State v. Bittner,* 227 N. W. 601 (Iowa 1929). We hold that in Maryland no exemption from the operation of the rule on witnesses exists for a witness who is a detective or police officer assisting in the preparation or presentation of the State's case. If the State elects to have the detective or officer remain in the courtroom despite a rule on witnesses, then he may not testify in its case in chief.

At the same time, however, it is settled that the refusal of the trial court to grant a timely request for the rule on witnesses is not reversible error *per se, Bulluck v. State,* 219 Md. 67, 148 A. 2d 433 (1959), the test being whether the court's refusal was prejudicial to the party requesting exclusion. *Johnson v. State,* 21 Md. App. 214, 319 A. 2d 581

4. In Frazier the United States Court of Appeals noted that the testimony of an FBI agent in charge of the case who was permitted to remain in the courtroom during parts of the trial "was not of great moment in the resolution" of the issue involved. The Court continued:

"This is not to say that when witnesses are sequestered from the courtroom, an FBI agent is automatically exempt from the order. The matter should not be decided routinely but in a genuine exercise of discretion, according to the attendant circumstances. Where the agent is the one in charge of the case and his presence is necessary, the court may permit him to remain although other witnesses are excluded. In that case, if it is anticipated that the agent will be called as a witness he should ordinarily be called first so as to avoid giving the prosecution unfair advantage or the appearance that the prosecution is being favored. This should be the order of presentation unless, in the judge's considered opinion, it would unduly break the continuity and seriously impair the coherence of the Government's proof. Of course, if the agent is permitted to remain in the courtroom and then rebuttal testimony from him is unexpectedly required, he should be given the opportunity to testify."

5. Code, § 38-1703 of the Georgia laws provides that "In all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude the witness." As interpreted by the Supreme Court of Georgia this confers upon the party requesting the rule "an absolute right," but subject to the "sound discretion of the trial judge in permitting one or more witnesses to remain in the courtroom to advise the opposite party in the presentation of his case. . . ." Ledford v. State, 113 S.E.2d 628 (Ga. 1960).

(1974); *Bulluck, supra; see Gunn v. State,* 4 Md. App. 379, 243 A. 2d 15 (1968); *Breeding v. State,* 220 Md. 193, 151 A. 2d 743 (1959); *Swift v. State, supra.* The same litmus test of prejudice would apply to an unauthorized exemption from the rule. In determining whether prejudice has resulted, reference must be had to the primary purpose of the rule which is to insure, as far as possible, that one witness shall not be taught, schooled or prompted by another's testimony; its application avoids an artificial harmony of testimony and may also avoid the outright manufacture of testimony. *Hurley v. State,* 6 Md. App. 348, 251 A. 2d 241 (1969); *Conway v. State,* 15 Md. App. 198, 289 A. 2d 862 (1972).[6]

Here, Sheriff Blizzard testified as the State's third witness in its case in chief, and reading from notes he gave the contents of a telephone call he had received from appellant immediately after the shooting. Later, Carolyn Folk took the stand and testified to the same conversation, adding language indicating a possible fear by appellant that there was a "trap to get him outside." Sheriff Blizzard was called as one of several rebuttal witnesses and again repeated the telephone conversation and denied that appellant had said anything about a "trap." It is solely this rebuttal testimony that appellant objects to as prejudicial, although we note that at trial his objection was merely that it "is exceedingly cumulative." We fail, in any event, to see how the sheriff was schooled, taught or prompted on the subject of Mrs. Folk's testimony by anything he heard in court. Hers was the first reference in the testimony to a "trap" and the sheriff resumed the stand to rebut this testimony essentially by restating what he had already reported in detail in testifying prior to Mrs. Folk. Appellant has shown no

---

6. The Arkansas rule on exclusion of witnesses, like Maryland's, is mandatory and eliminates the discretion theretofore vested in the trial court in criminal cases. In Reynolds v. State, 497 S.W.2d 275 (1973), in which the appellant invoked the rule, the Supreme Court of Arkansas found prejudicial error in the trial court's permitting the victim's brother, who had been subpoenaed as a witness by the State and the defendant, to sit at the counsel table after the State indicated it would be prejudiced without his assistance since he had "followed this throughout." He was not called as a witness by the State but was called by the appellant-defendant.

prejudice resulting from the court's failure to exclude the sheriff's rebuttal testimony.

### III

Appellant further argues that the court erred in permitting Bramble's testimony, over objection, as to his reason for going to where appellant was living, specifically — "because I [Bramble] wanted to talk to him about the situation my wife had talked to me about," and "I wanted him to know how I felt." Appellant finds objectionable, too, the State's questioning of him on cross-examination regarding his relationship with Bramble's wife. Both areas of testimony, in his view, constitute "remote and prejudicial evidence."

The trial court excluded as hearsay any testimony by Bramble about statements made to him by his wife but permitted him to state what he did as a result of the conversation. That ruling, of course, was entirely correct. The statements quoted above do not, in substance, go beyond indicating what the witness did *as a result of* his conversation with his wife, and were therefore admissible.

Similarly, the testimony which elicited that appellant had had sexual relations with Bramble's wife within two months of the shooting was clearly relevant to the issues of Bramble's reason for going to the Folk house, appellant's credibility in denying knowledge of the identity of the operator of the pickup truck, and his intent in firing the shots. That it may also have reflected adversely on appellant's moral character in the jury's mind was an additional factor for the trial court to weigh before permitting the testimony. *See* McCormick, *Law of Evidence* (1972 ed.) p. 440. The court did not abuse its discretion in allowing it.

### IV

Appellant's remaining contention is that the court abused its discretion in refusing to grant his new counsel a continuance of the hearing on his motion for a new trial.[7]

---

7. Appellant was represented by the office of the Public Defender at the trial. He engaged private counsel on the motion for a new trial but is again represented on appeal by the Public Defender.

The motion had alleged six reasons including, in addition to the customary allegations, claims of misconduct, bias and disqualification of jurors. No affidavits in support of any of the assigned reasons accompanied the motion. At the hearing on the motion counsel for appellant indicated that he had been engaged by appellant only since the trial ten days earlier, that he had already "developed and received" information bearing on alleged misconduct and bias of jurors but would need an additional week to fully develop the evidence. The court, noting that no supporting affidavit accompanied the motion, asked counsel for "something specific to back it up." Counsel, although reluctant to limit himself at that time, requested one week's continuance and, when pressed by the court, proffered to show at a later date that a juror had been dozing at various times during the trial, that another was "so sick he didn't go to lunch, and . . . expressed the desire that he would like not to have to sit on the rest of the case . . . ," and that a third juror, when presented with a photograph "closed her eyes and turned her head ¼ of a turn to the right." But the real substance of his proffer was that

> ". . . this all goes back to the motion that was filed for removal at the beginning of this case, and I think it will all bear out that this Defendant did not have a fair trial. . . . I am not criticizing this particular jury. . . . I think any jury that sat in Kent County would have been incapable of rendering a fair and impartial verdict in the light of this Defendant. . . .

> * * *

> "Judge Rasin: Well, apparently you were asking me to assume that it is impossible to get a fair jury.
> "Mr. Fennell: We are offering proof of it in this case, Your Honor."

The court ruled that it was "too late now" for proof of the

latter charge, the same having been made in a written motion for removal filed prior to the trial and later denied by the court following extensive *voir dire*. The particular claims with respect to the jury, the court found, were "bald allegations" and a pretext for a "fishing expedition." Had the anonymous witnesses who had observed any alleged misconduct by the jury been "willing to put themselves on the line and make affidavits about it and attach [them] to the [motion]" the court indicated it might have been disposed to grant the continuance. We find no abuse of discretion by the court in declining to do so. *Hainesworth v. State*, 9 Md. App. 31, 262 A. 2d 328 (1970). We note that there was an alternate juror and that no claim of misconduct or inattention on the part of any juror was presented to the trial judge during the proceedings below.

*Judgments affirmed.*