763 A.2d 151

**Todd Alan THARP**

v.

**STATE of Maryland.**

**No. 1, Sept. Term, 2000.**

Court of Appeals of Maryland.

Dec. 7, 2000.

82

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner/cross-respondent.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent/cross-petitioner.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

Todd Alan Tharp, Petitioner, was convicted by a jury in the Circuit Court for Baltimore County of second degree murder and robbery with a dangerous or deadly weapon. He was sentenced to thirty years in prison for the second degree murder conviction and a consecutive twenty-year sentence for the armed robbery conviction.

At the earlier trial in the Circuit Court of Petitioner's co-defendant, Keith Sellers (Sellers), the trial judge had excluded Petitioner's trial attorney from the courtroom pursuant to the witness sequestration provisions of Maryland Rule 5–615.[1]

---

\* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 5–615, exclusion of witnesses, states:

(a) **In general.** Except as provided in sections (b) and (c) of this Rule, upon the request of a party made before testimony begins, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. When necessary for proper protection of the defendant in a criminal action, an identification witness may

Prior to jury voir dire at Petitioner's trial, Petitioner's attorney moved to dismiss the charges against Petitioner or, in the alternative, to hold depositions, based on Petitioner's attorney's earlier sequestration from Sellers's trial. The Circuit Court denied both motions. Petitioner's convictions ensued.

The Court of Special Appeals affirmed, finding ultimately that the sequestration of Tharp's trial attorney from Sellers's trial constituted harmless error under the circumstances. *Tharp v. State*, 129 Md.App. 319, 742 A.2d 6 (1999). We granted Tharp's petition for writ of certiorari and the State's cross-petition. *Tharp v. State*, 358 Md. 162, 747 A.2d 644 (2000).

Petitioner presents the following question:

Did the Court of Special Appeals err in holding that the trial judge's exclusion of Petitioner's trial attorney from a co-defendant's earlier trial was harmless error?

The State asks the following question on its conditional cross-petition:

Did the Court of Special Appeals incorrectly determine that the trial court erred in sequestering Tharp's counsel at a co-defendant's trial where counsel had been listed as a potential defense witness?

be excluded before the defendant appears in open court. The court may order the exclusion of a witness on its own initiative or upon the request of a party at any time. The court may continue the exclusion of a witness following the testimony of that witness if a party represents that the witness is likely to be recalled to give further testimony.

(b) **Witnesses not to be excluded.** A court shall not exclude pursuant to this Rule.

(1) a party who is a natural person,

(2) an officer or employee of a party that is not a natural person designated as its representative by its attorney,

(3) an expert who is to render an opinion based on testimony given at the trial,

(4) a person whose presence is shown by a party to be essential to the presentation of the party's cause, such as an expert necessary to advise and assist counsel, or

(5) a victim or a crime of violence or the representative of such a deceased or disabled victim to the extent required by statute.

We affirm. The trial court in Sellers's trial erred in not recognizing that Petitioner's attorney effectively had been removed from the defense's witness list, and thus was no longer subject to the sequestration witness rule. Moreover, the trial judge did not err in refusing to grant Petitioner's motions to dismiss or for depositions.

## I.

## THE FACTS

### A. The Murder

On 28 March 1997, Baltimore County Police were dispatched to a wooded area near the intersection of Route 40 and Jones Road in Baltimore County. The responding officers found a dead body, later identified as that of Michael Keller (Keller). The next day an autopsy was performed by an assistant state medical examiner, who ultimately testified at Tharp's trial that the wounds found on Keller's body included nine stab wounds to the back, any one of which would have caused death within two minutes and, in combination, killed Keller in less than one minute. This witness also testified that Keller sustained a non-fatal, one-inch deep cut to the throat while apparently still alive.

Additional testimony at Tharp's trial revealed that Tharp, Sellers, and William Minton (Minton), were involved in Keller's murder. Minton, testifying as a State's witness,[2] explained that Tharp and Sellers came to Minton's house on 25 March 1997, to seek his assistance in a plot against Keller. Sellers asked Minton if he would help beat up Sellers's roommate, Keller, because Keller stole from him and had not contributed money toward rent or food. Minton understood that the three would take Keller to Delaware where they

---

**2.** It was explained that Minton testified as part of a plea bargain with the State regarding his role in the murder of Keller. The bargain was that, for truthful testimony, Minton, though charged with first degree murder, would be permitted to plead guilty to second degree murder, for which the State would recommend a 30 year sentence.

would assault him, take his money,[3] and abandon him. The proposed site for the intended assault was changed later to Maryland.

On 27 March 1997, Tharp and Minton reconnoitered the area near Jones Road and determined that it was suitable for the planned attack on Keller. Under the guise of going to a party, they then picked up Sellers and Keller at their residence. The four men went to the Jones Road area and proceeded to walk down a dirt road to a pond. According to Minton's testimony, Sellers suddenly grabbed Keller in a bear hug and fell to the ground, knocking down Minton with them. Sellers got Keller face down on the ground and tried to handcuff his hands behind his back. Keller offered to pay Sellers the money that he owed him, but Sellers responded that it was too late. Tharp, Sellers, and Minton then began kicking Keller. At some point, Minton feigned a sprained ankle to avoid having to continue to kick Keller. He walked a short distance away from the others and remained there with his back to the action, but nonetheless overheard Tharp become startled and upset, asking Sellers what he was doing. Minton turned around and saw Sellers stab Keller three times in the back. Minton again turned his back on the scene, but he "heard the stabbing continue ... [a]bout six or seven more times" and heard Tharp refuse to aid Sellers. Tharp walked over to Minton and suggested that the two of them leave without Sellers. As they started to leave, Sellers caught up with them and the trio walked back to the car. They got into the car, at which point Minton noticed that Sellers had Keller's necklace. The next day, Sellers stated that the night before he had taken Keller's identification and left a vial of drugs on Keller's body so that the murder would appear drug-related.

---

3. Tharp testified that he did not think that Keller was to be robbed because the common employer of Tharp, Sellers, and Keller was not going to pay them when they had expected and, therefore, Keller likely would have no money when the assault was planned to occur.

Detective Jay Landsman took a statement from Tharp on the evening of 29 March 1997. Tharp acknowledged that he had gone to the Jones Road area with Sellers and Keller on the 27th of March, but claimed that he had dropped them off and returned later to pick up Sellers who was alone. Sellers reportedly told him that Keller had remained in the woods. In his statement, Tharp also claimed that he only learned of Keller's death from a TV Channel 13 news story.

On 31 March 1997, Landsman and two other officers arrested Tharp. During the ride to the station house, Tharp volunteered to relate to Landsman "everything" and directed the officers to where the men had placed the knives, handcuffs, and various other items used during the attack. Later, at police headquarters, Tharp gave the police a statement explaining how he, Sellers, and Minton had induced Keller to accompany them to the woods. He further explained the details of the attack, and particularly that he had cut Keller's throat, and found Keller's necklace in his car, but gave it to Sellers.

Throughout his trial, Tharp maintained that he believed that Sellers only intended to fight Keller, not to kill him. He testified that Sellers only began stabbing Keller after he, Tharp, had walked away from the affray. Tharp claimed that he hesitated to intervene because the stabbing went beyond what was supposed to be only a fight. He stated that he screamed at Sellers to stop the stabbing. Additionally, Tharp testified that he did not stab Keller in the neck to "put him out of misery," as he had maintained in his second statement to the police, but because Sellers ordered him to "do something." Tharp believed that Keller was dead by the time he stabbed him because he was not moving and had been stabbed several times previously.

### B. The Sequestration

Sellers was tried before Tharp. At Sellers's trial on 29 October 1997, after the selection of the jury and immediately before opening statements, one of the attorneys representing

Sellers and one of the prosecutors[4] made a joint motion to
sequester witnesses, which the trial judge granted.[5] The
judge ordered that "[a]ny persons who testify during the trial
should be removed to the hallway at this time, not to discuss
the case either before or after they testify until the case is
completely concluded." The prosecution reminded the court
that the sequestration applied to Tharp's trial attorney, who
was present in the courtroom, because he was on Sellers's
submitted witness list.[6] The court then specifically requested
Tharp's trial attorney to leave the courtroom. Sellers's attor-
ney rose in objection: "We'll waive [Tharp's trial attorney]—
he's our witness lift [sic]. We'll waive." (Second alteration in
original). The prosecution, upon implied inquiry by the judge,
refused to "waive." The court, on the asserted ground that
Tharp's attorney lacked standing to do so, answered in the
negative to Tharp's attorney's query regarding whether he
could object. Advising the court that he would be at his office,
Tharp's attorney left the courtroom saying "[i]f I can't watch
I'm gonna leave." We fast forward approximately eleven
months to Tharp's trial because the record of Sellers's trial
falls silent at this point as to any further matters of conse-
quence to the issues at hand in the present case.

On 28 September 1998, immediately before Tharp's trial was
to begin, his attorney made a motion to dismiss the charges
for prosecutorial misconduct or, in the alternative, a motion to
postpone Tharp's trial and permit him instead to depose all of
the State's intended witnesses in Tharp's trial who also had

---

4. A co-prosecutor at Sellers's trial was also the prosecutor at Tharp's
trial.

5. The same trial judge presided over Sellers's and Tharp's trials.

6. Although Tharp's trial attorney was not permitted, at the time of his
initial expulsion from the courtroom in Sellers's trial, to explain why he
was on the defense's witness list, it appears that he was on the witness
list in connection with Sellers's attorney's intention to call Tharp either
to testify or invoke his Fifth Amendment rights. Apparently, Tharp's
attorney was placed on the witness list by Sellers's attorney because of
his anticipated role in advising Tharp of his rights. Unfortunately, this
intent was not stated so clearly on the record in Sellers's trial.

testified at Sellers's trial. During argument on his motion to dismiss, Tharp's attorney reminded the Circuit Court of his sequestration from Seller's trial approximately a year earlier. He stated that he was present at Sellers's trial to act as Tharp's attorney in the event that Tharp was called to testify and otherwise "to observe the witnesses and listen to the testimony." According to Tharp's attorney, "[i]t was known by everyone concerned that I had absolutely no knowledge, no firsthand knowledge, no factual knowledge about the case."

Tharp's attorney recounted his recollection of what took place at various points during Sellers's trial, including an unrecorded chambers conference, in the presence of the judge, the prosecuting attorneys, himself, and Sellers's attorneys, the day following the initial sequestration. At this chambers conference, he asserted that the judge reconsidered his sequestration. According to the transcript of the oral argument on Tharp's pretrial motions at his own trial, his attorney described the following exchange that reportedly took place at the pertinent chambers conference during Sellers's trial:

[THARP'S TRIAL ATTORNEY]: Uhm, your Honor indicated that so long as the State was continuing to object to my presence that I would not be permitted to sit in the courtroom, and your Honor asked [the State's attorney] if he was still objecting. [The State's attorney] at that time said, and I, if this isn't a direct quote, it's very close, he indicated, *Trials are a chess game. Checkmate. Now, I'm not sure I know what that means, but I took that to mean that he had the upper hand;* ... it was not going to do anything ... to jeopardize his case ..., an in his opportunity to get a conviction against [Tharp]. He also said, as part of that same discussion that [Tharp's] trial was coming up. That there would certainly be an advantage to my being in court. Then said that bit about it's chess game. (Emphasis added).

Tharp's attorney then argued that he was barred from the courtroom during Sellers's trial for the wrong reason—a strategic ploy by the prosecution. He explained that although he later was able to obtain a transcript of Sellers's trial, "there's

a lot more that goes on in that trial than can be covered in a transcript—there's ... how someone testifies, body language, credibility, those sorts of things." He maintained that his sequestration amounted to prosecutorial misconduct and accordingly Tharp's charges should be dismissed.

The prosecutor responded that he remembered making the chess game remark, but that possibly he had taken some poetic license in its formulation. The prosecutor continued:

I guess [Tharp's Attorney's] saying that somehow his client has right to a, see the whole trial happen before his trial. But he doesn't. I mean, it, he was sequestered not because of anything the State did, and he hasn't been prejudiced in any way as a result of it; ... [he] was on the Defense witness list. And if any misconduct at all—I mean, we really didn't know why he was on the list. And if the Court will recall, there was a long line of witnesses called by the Defense so it wouldn't have really surprised me if the Defense ... tried to call [Tharp's attorney] for some obscure reason. So we did it just to ... tactically, yes, but in the case against Mr. Sellers, not really against the case against [Tharp]. So I think there's been no foul.

Tharp's attorney retorted that he had a personal right, as a citizen, to be at Sellers's trial and that Sellers's rights had been violated because the prosecution was "putting on a trial [Sellers's trial] to exclude me simply to gain strategic advantage in ... [Tharp's] trial." He further maintained that the prosecutor must have known that he would not be called as a defense witness for Sellers because if he was a fact witness regarding Keller's murder he would be unable to act as Tharp's attorney.

The court, after examining Maryland Rule 5–615, determined, in Tharp's trial, that it had not violated the Rule by granting and enforcing sequestration in Sellers's trial and, thus, denied Tharp's motion to dismiss. Tharp then made a motion for depositions. He requested that the court convert the trial into a series of depositions so that he would have the opportunity to see and to hear the witnesses testify that were common to Sellers's trial and Tharp's imminent trial and,

therefore, place his attorney in the same position that he would have been had he been present at Sellers's trial. The court denied this motion as well.

In a final initiative, Tharp's attorney purported to remind the court that, at Sellers's trial when Tharp ultimately was called as a witness by Sellers, he stood with Tharp, outside the presence of the jury, and advised him to invoke his Fifth Amendment privilege. The court thereupon assertedly excused Tharp's attorney "permanently." Tharp's attorney further recounted that he later attempted to reenter the courtroom during Sellers's trial to listen to Minton's testimony. The court, however, reportedly with hand gestures, indicated that he was to leave, and he complied. Tharp's attorney then asked the court to reconsider its denial of Tharp's motions. In response, the court stated:

> I don't have an independent recollection of any of that [from Seller's trial]. It does not alter my conclusion that you were properly excluded when you were on a witness list for ... [Sellers]. I don't know exactly the context in which you asked me if you were excused permanently and I indicated yes. Certainly if your client was going away to the Baltimore County Bureau of Correction you weren't going to be needed anymore to represent him but you were still on the witness list and we were in the ... [defense's] case at the time so, again, I don't think that anything that I have done in this case ... violated Rule 5–615 and will not grant[, the] relief requested.

The trial judge proceeded with Tharp's trial. He ultimately was found not guilty of first degree premeditated murder and first degree felony murder, but guilty of second degree murder and robbery with a dangerous or deadly weapon. The judge imposed a thirty-year sentence for the second degree murder conviction and a consecutive twenty-year sentence for the armed robbery.

### C. Direct Appeal

Tharp appealed to the Court of Special Appeals. The intermediate appellate court affirmed the Circuit Court's judg-

ments. *Tharp*, 129 Md.App. 319, 742 A.2d 6. With regard to the sequestration of Tharp's attorney, the Court of Special Appeals concluded that Sellers's attorney effectively had removed Tharp's attorney from the defense witness list by excepting him from the sequestration motion. *Tharp*, 129 Md.App. at 338, 742 A.2d at 16–17. The intermediate appellate court disagreed, however, with Tharp's argument that the Circuit Court "violated fundamental fairness and due process" in not granting his motion for depositions. *Tharp*, 129 Md. App. at 341, 742 A.2d at 18. The court stated that it did not find that the "depositions were necessary to prevent a failure of justice" in light of the facts that Tharp's attorney ultimately obtained a transcript of Sellers's trial and that the record did not show that "any witnesses, other than ... Minton, testified in both trials." *Tharp*, 129 Md.App. at 342, 742 A.2d at 19. The court concluded that even if the denial of the taking of the depositions amounted "to some conceivable error," Tharp failed to demonstrate any resultant harm. *Tharp*, 129 Md. App. at 342–43, 742 A.2d at 19 (discussing *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976)).

## II.

This Court, in accordance with the U.S. Supreme Court, has determined that "criminal trials are presumptively open to the public." *Baltimore Sun Co. v. Colbert*, 323 Md. 290, 298, 593 A.2d 224, 227 (1991) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)); *see Carter v. State*, 356 Md. 207, 214, 738 A.2d 871, 874 (1999) (citing the Sixth Amendment of the United States Constitution to demonstrate the presumption of openness of criminal trials); *see also Watters v. State*, 328 Md. 38, 44, 612 A.2d 1288, 1291 (1992) (stating that the "Supreme Court has ardently protected a criminal defendant's right to a public trial" (footnote omitted) (citing *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984))), *cert. denied*, 507 U.S. 1024, 113 S.Ct. 1832, 123 L.Ed.2d 460 (1983).

The openness of criminal trials to the public is a strong tradition in American jurisprudence and can be traced back to English common law and to Maryland's subsequent adoption of the common law of England, preserved for our citizens by Article 5 of the Maryland Declaration of Rights.[7] *See Baltimore Sun Co. v. Mayor and City Council of Baltimore*, 359 Md. 653, 660–61, 755 A.2d 1130, 1133–34 (2000) (outlining the history of the presumption of openness in criminal and civil trials, starting with the common law of England). The openness of criminal trials also finds penumbral support in Article 21 of the Declaration of Rights.[8] *See Dutton v. State*, 123 Md. 373, 386–87, 91 A. 417, 422–23 (1914) (citing Article 21 of the Maryland Declaration of Rights and discussing it in relation to the exclusion of the public and witnesses from a criminal trial, when necessary, and that such exclusion is still consistent with Article 21). The object of Article 21 is "to declare and secure the pre-existing rights of the people as those rights had been established by usage and the settled course of law." *Kardy v. Shook*, 237 Md. 524, 542, 207 A.2d 83, 93 (1965) (internal quotation marks omitted) (quoting *Lanasa v. State*, 109 Md. 602, 71 A. 1058 (1909)). As for how it applies to public trials, we have stated that "[u]nder no circumstances should a trial

---

7. Article 5 of the Maryland Declaration of Rights states, in pertinent part:

 That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; any which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity. . . .

 MD CONST. art. 5.

8. Article 21 of the Declaration of Rights states:

 That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defense; to be allowed counsel; to be confronted with the witnesses against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

 MD. CONST. art. 21.

be so concluded as to have the appearance of a Star Chamber [9] proceeding, but cases sometimes occur which have a demoralizing influence on the spectators and to some extent on the community," necessitating exclusion of some members of the public. *Dutton,* 123 Md. at 389, 91 A. at 422–23. It is the avoidance of a Star Chamber-like proceeding that stems from Article 21 of the Declaration of rights. *Hughes v. State,* 288 Md. 216, 222, 421 A.2d 69, 73 (1980). To avoid such an appearance, we have acknowledged "the historical significance and critical function, that a public trial serves in the administration of justice." *Carter,* 356 Md. at 214, 738 A.2d at 875 (citing *Dutton,* 123 Md. at 389, 91 A. at 422–23).

A criminal defendant's right to a public trial, however, is not absolute. *Carter,* 356 Md. at 216, 738 A.2d at 875; *see Baltimore Sun Co.,* 359 Md. at 662, 755 A.2d at 1135 ("The common law rule that court proceedings, records, and documents are open to the public is fully applicable in Maryland except to the extent that the principle has been modified by legislative enactments or decisions by this Court."); *Watters,* 328 Md. at 45, 612 A.2d at 1291 ("[T]he public may only be constitutionally excluded from a trial ... pursuant to a narrowly tailored order to protect an overriding state interest."). For example, in *Carter,* 356 Md. at 219, 738 A.2d at 877, we referred to the Court of Special Appeals's opinion in *Walker v. State,* 125 Md.App. 48, 723 A.2d 922 (1999). In that opinion, the intermediate appellate court observed that "prophylactic measures, including closure, may be warranted under some

---

9. Historically, the Star Chamber, created in 1487 by King Henry VII, was an English court controlled by the monarch. BLACK'S LAW DICTIONARY 1414 (7th ed.1999). The court had broad civil and criminal jurisdiction and is noted for "its secretive, arbitrary, and oppressive procedures, including self-incrimination, inquisitorial investigation, and the absence of juries." *Id.* The Star Chamber was abolished in 1641 because of its abuse of power. *Id.* Today, the term "Star Chamber" is used to describe a "secretive, arbitrary, or oppressive tribunal or proceeding." *Id.* The U.S. Supreme Court explained that Anglo American distrust for secret trials stems, in part, from "the excesses of the English Court of Star Chamber." *In re Oliver,* 333 U.S. 257, 269, 68 S.Ct. 499, 505, 92 L.Ed. 682 (1948).

circumstances, ... to maintain order, to preserve the dignity of the court, and to meet the State's interests in safeguarding witnesses and protecting confidentiality." *Walker,* 125 Md. App. at 69, 723 A.2d at 932 (citing *Waller,* 467 U.S. at 45, 104 S.Ct. 2210, 81 L.Ed.2d 31; *Walker v. State,* 121 Md.App. 364, 371, 709 A.2d 177, *cert. denied,* 351 Md. 5, 715 A.2d 964 (1998)). Maryland Rule 5–516, *see supra* note 1, is a clear exception to a criminal defendant's right to a public trial. In effect, those sequestered by Rule 5–615 are no longer considered members of the general public for purposes of exclusion from the courtroom during criminal proceedings, and a criminal defendant's right to a public trial is in no way damaged by proper sequestration under Rule 5–615.

 There are good reasons for this exception. The general purpose of the sequestration of witnesses "has been to prevent ... [witnesses] from being taught or prompted by each other's testimony." *Bulluck v. State,* 219 Md. 67, 70–71, 148 A.2d 433, 435, *cert. denied,* 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 85 (1959). Additionally, the object of Maryland Rule 5–615 "is to prevent one prospective witness from being taught by hearing another's testimony; its application avoids an artificial harmony of all the testimony; it may also avoid the outright manufacture of testimony." [10] *Redditt v. State,* 337 Md. 621, 629, 655 A.2d 390, 394 (1995) (internal quotation marks omitted) (quoting *Hurley v. State,* 6 Md.App. 348, 351–52, 251 A.2d 241, 244, *cert. denied,* 255 Md. 742 (1969)); *see also Johnson v. State,* 283 Md. 196, 200, 388 A.2d 926, 928 (1978) ("The purpose of the rule and its civil counterpart ... is to prevent a prospective witness from being taught or prompted by the testimony of another." (quoting *Brown v. State,* 272 Md. 450, 477, 325 A.2d 557 (1974)) (citing *Burton v. State Roads Comm'n,* 251 Md. 403, 404, 247 A.2d 718 (1968); *State Roads v. Creswell,* 235 Md. 220, 226, 201 A.2d 328 (1964);

---

**10.** With regard to this quotation, we were referring to Rule 4–321, which was rescinded effective 1 July 1994 and replaced by the present Rule 5–615. *Redditt v. State,* 337 Md. 621, 628 29, 628 n. 3, 655 A.2d 390, 393 n. 3 (1995).

*Bulluck,* 219 Md. at 70–71, 148 A.2d 433)). There is no express exclusion for attorneys from the sequestration of witnesses rule.[11] If an attorney is placed legitimately on the witness list and a sequestration motion is made, the attorney is subject to sequestration. By the same token, if an attorney is not subject properly to Rule 5–615, he or she is considered to be a member of the public, just as other persons not included on the witness list. As such, he or she may assert the right of the public to attend a trial, with the attendant right to seek judicial protection if that right assertedly is abridged. *See infra* Part V.

Taking into consideration the purpose of Rule 5–615, Petitioner argues that the Rule was intended to apply only to those "reasonably expected to be witnesses at the trial." Petitioner's Br. at 15. According to Tharp, his trial attorney's assertion that the trial judge, the State, and Sellers's counsel at Sellers's trial knew that he "had absolutely no knowledge, no firsthand knowledge, no factual knowledge of the case," coupled with the lack of any assertion to the contrary by the prosecutor or the trial judge, demonstrates that "neither party [to Sellers's trial] had any reasonable basis for believing that . . . [Petitioner's attorney] would be called as a witness." *Id.* Regardless of whether Petitioner's trial attorney in Sellers's case may not have been a fact witness, we disagree as a general principle that a threshold inquiry must be made by a trial judge in every case *merely* because an attorney's name appears on a witness list; however, we do perceive that a trial judge has both the right and the responsibility to inquire into the legitimacy of the presence of any person on a witness list in situations where a reasonable and prudent person would question an apparent or obvious abuse.

There is no pre-existing Maryland case law expressly supporting the proposition that Rule 5–615 requires any threshold

---

**11.** Some witnesses are not subject to the sequestration of witnesses under Rule 5–615. *See supra* note 1 (providing the text of Rule 5–615(b), Witnesses not to be excluded); *see also, e.g., Bobbitt v. Allied Signal, Inc.,* 334 Md. 347, 352–53, 639 A.2d 142, 144–45 (1994).

inquiry by any party or by the trial judge. We have stated that "although under our prior rules the sequestration of witnesses rested within the discretion of the trial court, 'the granting of a request to exclude witnesses is now obligatory and is no longer discretionary.'" *Johnson*, 283 Md. at 199, 388 A.2d at 927 (quoting *Swift v. State*, 224 Md. 300, 306, 167 A.2d 762, 765 (1961)) (citing *Brown v. State*, 272 Md. 450, 477, 325 A.2d 557 (1974)); *see Nickerson v. State*, 22 Md.App. 660, 667, 325 A.2d 149, 153 (1974) ("[T]he exclusion of witnesses was within the sound discretion of the trial court, reviewable only upon an abuse of that discretion, the matter is now otherwise and the granting of a request to exclude witnesses is obligatory and no longer discretionary." (quoting *Swift*, 224 Md. 300, 167 A.2d 762)).

The language of the Rule demonstrates that once a proper request for sequestration is made before testimony begins, the trial judge is required ordinarily to honor that request. The Rule states that the "court *shall* order witnesses excluded so that they cannot hear the testimony of other witness." Md. Rule 5–615 (emphasis added). We have determined that "'shall' ordinarily indicates a mandatory intent, unless the context of the statute indicates otherwise." *Burch v. State*, 358 Md. 278, 284, 747 A.2d 1209, 1212 (2000) (citing *Hirsch v. Md. Dep't of Natural Resources*, 288 Md. 95, 116, 416 A.2d 10, 21 (1980)). Moreover, we have declared that the witness sequestration rule, unless there is an objection or applicable exception, "provides that upon the request of a defendant or the State, the court *shall* 'order that the witnesses be excluded from courtroom until called upon to testify'" and thus have concluded that "[t]he present rule . . . changed the former rule of law in that the granting of a request to exclude witnesses is now obligatory and is no longer discretionary." *Swift*, 224 Md. at 306 & n. 2, 167 A.2d at 765 & n. 2.

■ Unless there is an applicable exception, objection, or apparent or obvious anomaly, the proper request for a sequestration order, the rule being obligatory and framed in mandatory terms, ordinarily triggers no responsibility on the part of

the court to make threshold inquiries into why a witness is on the witness list. We are unwilling, however, to reduce this principle to a hard and fast rule, the language of the rule notwithstanding. It is appropriate, as a general principle, to maintain that sequestration ordinarily is required when requested and no objection is made; however, we shall not encourage trial judges to turn a blind eye, in the absence of an objection, to obviously questionable situations or apparent shams, e.g., a party placing a member of the press on a witness list to exclude him or her from a courtroom, a defendant placing a prosecutor or the victim or members of the victim's family on the list to exclude such persons, and the like. Where a judge, applying a reasonable and prudent person standard, would question, on its face, the inclusion on a witness list of a person, the court, rather than hidebound to sequester without inquiry, should resolve promptly the apparently anomalous situation. Through prudent exercise of this superintending duty, the court can insure against mischief in the use of Rule 5–615.

Petitioner, in the present case, relies on *Addy v. Texas*, 849 S.W.2d 425 (Tex.App.1993), to argue the trial court should have made findings as to why his trial attorney was on the witness list before sequestering his attorney, and that his attorney should not have been excluded because "there was no suggestion as to how ... [Petitioner's attorney] might have qualified as a competent witness in Sellers's case." Petitioner's Br. at 15–17 (citing Md. Rule 5–602, which bars a witness from giving testimony on a matter in the absence of evidence that he had personal knowledge of the matter). Petitioner argues that the prosecutor was unable to demonstrate that Petitioner's attorney had any personal knowledge of the case; all that the prosecutor claimed was that "it wouldn't have surprised me if the Defense ... tried to call ... [Petitioner's attorney] for some obscure reason." Petitioner's Br. at 16–17. Petitioner's application of *Addy v. Texas* to the present case is off the mark.

In *Addy v. Texas*, the issue was whether "the exclusion from the courtroom of six friends of an appellant denied him

the right to a public trial." 849 S.W.2d at 428. On the second day of testimony, the prosecutor "requested that six spectators be sworn in and placed under the [sequestration of witnesses] rule as potential witnesses" because there was "a great possibility" that she was going to call them to testify. *Addy*, 849 S.W.2d at 426. The defense counsel countered that the six spectators had no knowledge of any of the facts of the case and were not going to testify. *Id.* The trial court, however, had the spectators removed from the courtroom in the belief that the sequestration rule had been invoked properly. *Id.* Before the end of the trial, the prosecutor stated that the true reason for having the six spectators removed was that there was a security risk for the State's informant to have the six friends present. *Addy*, 849 S.W.2d at 428. The Court of Appeals of Texas found that the trial court incorrectly sequestered the six friends from the courtroom because "the trial judge never made findings to justify removing appellant's friends from the courtroom." *Addy*, 849 S.W.2d at 429.

*Addy* does not support Tharp's argument that the court was obligated to make findings in support of sequestration, based solely on his attorney's presence on the witness list. *Addy* does support, however, the Court of Special Appeals's discussion of the need for findings before sequestering members of the public—those not on a witness list. *Tharp*, 129 Md.App. at 339–41, 742 A.2d at 16–17 ("Because ... [Petitioner's attorney] was no longer a witness when he was excepted from the motion to sequester, he was merely a member of the public."). The Court of Special Appeals's conclusion that Petitioner's attorney effectively had been removed from the defense's witness list parallels the essence of the Texas court's holding.

In *Addy*, the prosecution attempted to exclude the six friends on the basis that they may testify, though later admitting that they were omitted for security reasons. The Texas court discussed how the prosecution attempted to employ the witness sequestration rule improperly and ultimately, as in the present case, the six friends effectively were not on the witness list but were excluded improperly from the trial as

members of the public.[12] In the present case, Sellers, the defendant in the trial, placed Tharp's attorney on the witness list. There is no question that his name was initially on the witness list. The question in the present case, however, is whether the trial court erred in not recognizing Sellers's attorney's obtuse "waiver" comment as amounting to an effort to "waive" Petitioner's attorney from the witness list and, thus, from the sweep of mandatory sequestration.[13]

In *Addy*, the issue was whether the trial court erred in excluding appellant's six friends, who were placed illegitimately on the witness list, from the courtroom. The Texas court stated that its witness sequestration rule was not intended to permit the prosecution "to identify any spectator as a witness and [subsequently] have that person removed from the courtroom." *Id.* The heart of the Texas court's ruling was to deter the prosecution from having "unlimited power to control who stayed in the courtroom during trial by merely invoking the provisions of the 'exclusions of witnesses rule' to those it considered undesirable as spectators." *Id.* Petitioner here suggests that "the effect of applying Rule 5–615(a) to exclude . . . [his attorney] would be to give the State (or any party) power to remove any witness from the courtroom. The Rule

**12.** Though the Texas court did not state expressly that the six friends were not placed on the witness list, such can be implied from the court's discussion of not intending the sequestration rule to be used by parties "to identify any spectator as a witness and have that person removed from the courtroom." *Addy v. Texas,* 849 S.W.2d 425, 429 (Tex.App.1993). Furthermore, the court, in formulating its decision, relied on cases that involved the closure of the trial, entirely or partially, to members of the press and public to support its conclusion that the trial judge should have made findings before removing the six friends from the courtroom. *Id.* (citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Levine v. United States,* 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); *Rovinsky v. McKaskle,* 722 F.2d 197 (5th Cir.1984)).

**13.** With the benefit of the hindsight we enjoy as to the role that Tharp's attorney played in Sellers's trial when Tharp was called as a defense witness, it is difficult to appreciate why he was on the witness list in the first instance.

could not have been intended to permit such an irrational result." Petitioner's Br. at 17.

 We agree with Petitioner and the Texas court in that respect. The Court of Special Appeals addressed this issue:

> We reiterate that the *defense* placed ... [Petitioner's attorney's] name on its witness list, and the *defense* requested that witnesses be sequestered. This was not a situation in which the State named an individual as a witness with no intention of calling that person to testify and then strategically moved to sequester witnesses for the sole purpose of keeping that person out of the courtroom. We caution that such a tactic would likely amount to bad faith as well as violate the canon of ethics. That is far from what occurred in this case, however, and accordingly we decline to address the issue of bad faith.

*Tharp*, 129 Md.App. at 336 n. 6, 742 A.2d at 16 n. 6. Petitioner suggests that, assuming that his trial attorney was not removed effectively from the witness list, findings should have been made prior to the sequestration of Petitioner's attorney, and in not doing so, the trial court gave the prosecution power to remove witnesses arbitrarily from the courtroom. As stated *supra*, we disagree with the argument that the mere inclusion of a person on a witness list, absent more, triggers a requirement that the trial judge make threshold findings or inquiries; however, we also conclude that, in those situations when a trial judge reasonably should recognize that an apparent or obvious misuse of sequestration may be afoot, the judge has the right and responsibility, even absent an objection by a party, to inquire and make any required findings or take action as may be appropriate to the circumstances. In the present case, the prosecution was given the ability to attempt to gain an improper strategic advantage if the trial court erred in not recognizing the effort by Sellers's attorney as essentially removing Petitioner's attorney from the witness list. The court permitted the prosecution to have the last determination of whether Petitioner's attorney would be sequestered. Respondent is correct in stating that "[t]he [State] bears no

burden to proffer some reason why a defense witness might be called to testify, nor is the trial court required to set forth 'factual findings' suggesting why the individual might be called." Respondent's Br. at 9.

■ To ensure that one party is not given an inordinate amount of power over the other party in the sequestration of witnesses and to ensure that a defendant is provided with a public trial, it is necessary to follow the mandates of Rule 5–615: to allow sequestration of witnesses on the witness list; to have the granting of the sequestration ordinarily be mandatory, unless there is a clearly recognized exclusion, valid objection, or apparent or obvious anomaly that would trigger inquiry by a reasonable person; and, to permit a party to take a potential witness off his or her witness list if the person is not going to testify and therefore should not be subject to sequestration. If Tharp's attorney effectively was removed from the witness list, he became a member of the public and findings would have to be made,[14] as in the *Addy* case, before he could be banned from the courtroom. *See, e.g., Waller*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d 31 (stating that for a party to have a hearing closed from part or all of the press or public, the party that wants to have the hearing closed must "advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate

---

**14.** Excluding even just some of the public is considered to be a closure of the courtroom and may affect a defendant's right to a public trial. *See, e.g., Watters v. State*, 328 Md. 38, 42, 612 A.2d 1288, 1290 (1992), *cert. denied*, 507 U.S. 1024, 113 S.Ct. 1832, 123 L.Ed.2d 460 (1993) (finding that a defendant's Sixth Amendment right to a public trial had been violated when the defendant's family members and possibly some press had been excluded from the courtroom while permitting in the courtroom prospective jurors, witnesses, and courtroom personnel); *Walker v. State*, 121 Md.App. 364, 373, 709 A.2d 177, 180–81 (1998) (clearing the court only of the defendant's family members while allowing other members of the public to remain and finding that such an exclusion without proper findings violated the defendant's Sixth Amendment right to a public trial), *cert. denied*, 351 Md. 5, 715 A.2d 964 (1998).

to support the closure"); *Carter*, 356 Md. at 223, 738 A.2d at 880 (finding that "the trial court did not make the requisite case-specific finding necessary to justify the closing of the courtroom to the public"); *see also Colbert*, 323 Md. at 300, 593 A.2d at 228–29 ("A court's case by case determination concerning whether conditions are present which permit closure requires that representatives of the press and the general public 'be given an opportunity to be heard on the question of their exclusion.'" (internal quotation marks omitted) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, 2621 n. 25, 73 L.Ed.2d 248 (1982) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401, 99 S.Ct. 2898, 2916, 61 L.Ed.2d 608 (1979) (Powell, J. concurring)))); *see also infra* Part V.

## III.

▮▮▮ Respondent argues that the Court of Special Appeals erred in concluding that, by "waiving" sequestration as to Tharp's attorney, Sellers's attorney, in effect, removed Tharp's attorney from the defense's witness list. Respondent contends that "Seller's counsel could have easily stated that he was removing . . . [Tharp's attorney] from the defense list. Counsel did not do so, however, and the trial court accordingly correctly excluded . . . [Tharp's attorney] from Sellers's trial." Respondent's Br. at 12. We disagree and find the following conclusions of the intermediate appellate court to be correct:

In this case, . . . [Tharp's attorney] was listed as a witness for the defense. Defense counsel moved for the exclusion of witnesses. Significantly, defense counsel then *excepted* . . . [Tharp's attorney] *from the motion*. The effect of this exception was to *remove* . . . [Tharp's attorney] *from the defense witness list*. As . . . [Tharp's attorney] was not on the State's witness list, *he was no longer a witness in the case*. While Rule 5–615 permits the court to exclude witnesses on its own initiative, it does *not* authorize the court to exclude non-witnesses from the courtroom. Indeed, doing so without adequate justification may result in the denial of the defendant's right to a public trial.

*Tharp,* 129 Md.App. at 338–39, 742 A.2d at 16–17 (footnotes omitted). The Court of Special Appeals, in reaching the above conclusions, reiterated that, according to Tharp's attorney's recollection as recited at Tharp's trial on 28 September 1998, Sellers's attorney, at Sellers's trial, stated that Tharp's attorney was not a fact witness.[15] *Tharp,* 129 Md.App. at 338 n. 8, 742 A.2d at 17 n. 8. Tharp's attorney stated to the trial judge that Sellers's attorney "told the [c]ourt that I was not a fact witness . . . and at the time . . . [the prosecution] did not question that." Although we are unable to find in the record of Sellers's trial where this statement was uttered to the trial judge, assuming it was communicated (because neither the trial judge nor the prosecutor contradicted Tharp's attorney's recollection), stating that he was not a fact witness tends to support the conclusion that Sellers's attorney was taking Tharp's attorney off of the witness list. *See supra* note 6. As a practical matter, there may be a difference between those placed on a witness list and those who actually testify. A party can place most anyone on a witness list-subject to a bad faith challenge-but only testimony based on factual knowledge, even expert opinion, is admissible. *See* Md. Rule 5–602; *see also supra* note 15.

Whether viewed individually or cumulatively, the three occasions during Sellers's trial when the propriety of sequestering Tharp's attorney arguably was brought to the trial judge's

**15.** According to Maryland Rule 5–602, "[e]xcept as otherwise provided by Rule 5–703 [Bases of opinion testimony by experts], a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony." In elaboration, we have stated that "[b]orn of this insistence upon reliability was the evidentiary rule that generally 'witnesses are not allowed to testify to their opinions or conclusions on material matters, but must [only] state facts within their knowledge relevant to the issues.' " *Robinson v. State,* 348 Md. 104, 115–16, 702 A.2d 741, 746 (1997) (alteration in original) (quoting 2 Underhill's Criminal Evidence § 305, at 763 (P. Herrick rev., 5 th ed.1956)) (citing 2 Spencer A. Gard, Jones on Evidence § 14:1, at 578 (6 th ed. 1972) ("[W]itnesses who do not qualify as experts shall testify to facts without stating their impressions, conclusions or opinions." (alteration in original))).

attention lead us to conclude that the court erred in maintaining its resolve to bar him from the courtroom. First, the ambiguity of Sellers's "waiver" remark notwithstanding, a reasonable person, charged with the protection of the defendant's right to a public trial and the public's right to attend court, would have inquired of Sellers's counsel specifically what he intended to convey by his "waiver" remark. The "waiver" comment was in response to the State pointing out that the sequestration request included Tharp's attorney. In this circumstance, Sellers's attorney's remark could be construed reasonably as being aimed at waiving Tharp's attorney from the effect of the sequestration motion (particularly if coupled with an assertion that Tharp's attorney had no factual knowledge), thereby intending to redact his witness list. Respondent does not argue that a witness list cannot be modified, but rather that "the deletion (or addition) of an individual from a witness list is a matter that can and should be accomplished with ease and clarity, through a simple request by counsel." Respondent's Br. at 12. Respondent's point cuts both ways. If the trial judge was confused as to what Sellers's counsel intended to accomplish by his "waiver," a clarification could have been requested simply and expeditiously. Though Respondent's argument is not without persuasive force as a general rule, it is more appropriate, given the rights at stake, for us to take a broader view of the court's responsibility under these circumstances to appreciate, or at least inquire further regarding, what Sellers's attorney was attempting to do-to redact the defense witness list in Sellers's case.

The trial court erred from the inception in not inquiring further or not recognizing that Tharp's attorney had been redacted from the witness list, given the circumstances, and thus was no longer subject to Rule 5–615. The Court of Special Appeals aptly stated:

> The rule [5–615] also allows the court to exclude witnesses on motion of a party. In this case, the State did not move to exclude ... [Tharp's attorney]. Instead, in ruling on ... [Seller's attorney's] motion, the court deferred to the State's

position. Therefore, . . . [Tharp's attorney] was not properly excluded "upon the request of a party," as provided in the rule. We note that, even if the State had moved to sequester . . . [Tharp's attorney] under Rule 5–615, granting such a motion would have been improper. As we have discussed, [Tharp's attorney] was not named on the State's witness list, and had just been effectively removed from the defense witness list. Therefore, he was no longer a witness subject to the rule.

*Tharp*, 129 Md.App. at 338 n. 9, 742 A.2d at 17 n. 9. Furthermore, the trial court incorrectly deferred to Respondent's position after Tharp's attorney had been removed from the witness list and was no longer subject to 5–615. In so doing, the trial court fell prey to what we now warn against: giving the prosecution the "unlimited power to control who stayed in the courtroom during trial by merely invoking the provisions of the 'exclusion of witnesses rule' to those [the State] considered undesirable as spectators." *Addy*, 849 S.W.2d at 429.

This principle particularly rings true in the present case, when it appears from what reportedly occurred at the chambers conference on the second day of Sellers's trial that the prosecution was attempting "to get a leg-up," not in Sellers's case, but in Petitioner's case. As noted, the prosecutor was the same in both cases. He admitted to making remarks regarding the idea that trials are a "chess game." Petitioner argues that the prosecution gained a strategic advantage. According to Petitioner, the prosecution was able to prepare more fully for Petitioner's trial:

An attorney's presence in the courtroom during a co-defendant's trial may aid his trial preparation in countless, more specific ways. For example, had . . . [Petitioner's attorney] been allowed to remain, he could have assessed how effective the attorneys were in examining the witnesses at the Sellers trial. He may have modified his approach to particular witnesses based on those assessments. Also, from seeing the jurors' reactions to a witness, a trial lawyer can better judge the witness's persuasiveness. This information may affect strategy in a fundamental way. For instance, if

a crucial State witness is very strong and seemingly unscathed by vigorous cross-examination, counsel may decide to advise his client to accept a plea offer. All the advantages of observing the Sellers trial were no doubt known to the prosecutor when, with obvious pleasure, he reacted to the trial judge's exclusion ruling by saying to . . . [Petitioner's attorney], "Trials are a chess game. Checkmate."[16] Petitioner's Br. at 19. It is arguable whether the prosecution, in making the chess analogy, was referring to Sellers's trial, Tharp's trial, or both. Defending against Petitioner's trial attorney's allegations at Tharp's trial, the prosecutor stated that he made these comments in relation to Sellers's trial. Additionally, it is at least debatable (though we conclude otherwise on the merits) whether the prosecution understood that Sellers's attorney wanted to remove Petitioner's attorney from the defense's witness list or was being obtuse on purpose. Respondent argues that "it is clear that both the trial court and the prosecutor *in fact* believed that . . . [Tharp's attorney] remained a potential witness." We shall not decide whether the prosecution actually understood that there was a redaction or whether the prosecution was acting in a purely strategic manner to gain an advantage over Petitioner's attorney. The Court of Special Appeals stated:

> Except for . . . [the prosecution's] offhand remark that trials are like a game of chess, arguably suggesting that the State had some strategic reason for excluding . . . [Tharp's attorney], . . . [Tharp] presents us with no indication that the State's opposition to his presence was in bad faith. Indeed, other than this isolated and ambiguous comment, nothing in the record remotely indicates that the State opposed . . . [Tharp's attorney's] presence in the courtroom for any reason other than that contemplated by the rule.

---

**16.** Whether Petitioner's trial attorney suffered a disadvantage of prejudicial proportion in preparing for Tharp's trial as a result of wrongful sequestration from Sellers's trial will be addressed in conjunction with whether there was prejudicial harm as a result of the trial judge's refusal to grant Tharp's attorney's motion to dismiss or for depositions. *See infra* Part IV.

*Tharp*, 129 Md.App. at 336 n. 6, 742 A.2d at 16 n. 6 (citing *Jones v. State*, 125 Md.App. 168, 724 A.2d 738 (1999)). Furthermore, because of the relative murkiness of the motives of the prosecution, we are unable to agree with Petitioner that the prosecutor's actions in Sellers's trial amounted to prosecutorial bad faith.[17] The circumstances of the present case, however, demonstrate why it is necessary that a trial court make clear, before the sequestration of witnesses, any potential ambiguity regarding whether a party is redacting its witness list.

█ Finally, even were we of a mind to deem the "waiver" remark to be so ambiguous as not to have triggered recognition of its significance or a need to inquire further, and assuming some allowance for the vagaries of recollection regarding the content of what may have been said at the unrecorded chamber's conference on the second day of Sellers's trial, we have no hesitation declaring that the trial judge erred by "permanently" barring Tharp's attorney from Sellers's trial following his appearance as Tharp's counsel (where he served only to advise Tharp of his right not to incriminate himself) when Tharp was called as a defense witness. The trial judge did not contradict Tharp's attorney's recitation that, when he attempted to return to the courtroom to listen to Minton's testimony during Sellers's trial, she waived him out of the courtroom. Having observed come to pass that which apparently had been foretold was the reason Tharp's attorney's name was placed on the defense witness list in the first instance, the court was obliged, at least, to question whether there was a legitimate reason to maintain sequestration of Tharp's attorney. Were we to fail to recognize such an obligation, we might foster occasions of potential future mis-

---

17. Declaring prosecutorial misconduct requires the meeting of quite a high standard, and due to the identified ambiguities permeating the relevant portion in the record in the present case, we are unable to conclude that prosecutorial misconduct took place. *See, e.g., Bloodsworth v. State,* 307 Md. 164, 512 A.2d 1056 (1986); *Fields v. State,* 96 Md.App. 722, 626 A.2d 1037 (1993).

chief in the use of Rule 5–615 and placing at risk the public trial rights discussed *supra.*

## IV.

Petitioner contends that the Court of Special Appeals erred in finding that the trial court's exclusion of his trial attorney from Sellers's trial was harmless error. We need not resolve this point as we conclude there was no error in Tharp's trial. Although we have determined that the trial court erred in excluding Petitioner's attorney, the error was in Sellers's trial, not in Petitioner's. It follows that any primary harm resultant from that error occurred in Sellers's trial and with regard to Sellers's right to a public trial or Tharp's attorney's right, as a member of the public, to attend.[18] *See supra* Part II. The Court of Special Appeals accurately noted that the issue in the present case is not whether there was a denial of Petitioner's "Sixth Amendment right to a public trial," but that that issue needs to be addressed "because it lies at the heart of the court's error in excluding ... [Petitioner's attorney] from the courtroom in the Sellers case." *Tharp,* 129 Md.App. at 339, 742 A.2d at 17 (emphasis in original). The intermediate appellate court reiterated "that the exclusion order occurred in Sellers's case, not in" Tharp's and thus, "the question ... [Tharp] presents on appeal is whether, *in light of that error,* the court in his case erred in refusing to grant relief in the form of a dismissal or permission to depose the witnesses common to both cases." *Tharp,* 129 Md.App. at 341, 742 A.2d at 18.

**18.** Neither Petitioner nor his trial attorney would have standing to assert that Sellers's right to a public trial was violated for this right belongs to Sellers, who was represented by separate counsel. We have stated that "[a]s a general rule, a person may not assert the constitutional rights of others." *Turner v. State,* 299 Md. 565, 571, 474 A.2d 1297, 1300 (1984) (citation omitted). As discussed, *infra* Part V, Tharp's trial attorney did have standing to seek redress as a member of the public to whom the criminal proceeding was closed. *See, e.g., Baltimore Sun Co. v. Colbert,* 323 Md. 290, 593 A.2d 224 (1991).

### A. Motion to Dismiss

Tharp argues that, in light of the trial court's error in sequestering his attorney from Sellers's trial, the trial court, in Tharp's trial, erred in not granting either his motion to dismiss based on prosecutorial misconduct or his motion for depositions. With regard to the motion to dismiss, Tharp argues that the prosecutor's actions, in conjunction with the sequestration order in Sellers's trial, were "clearly intended to hinder ... [his] trial preparation. In comparable circumstances, governmental misconduct has been deemed sufficient to support dismissal of the charges." Petitioner's Br. at 28 (citing *Washington v. Burri,* 87 Wash.2d 175, 550 P.2d 507 (1976)). As stated above, we are unable to conclude that the prosecution's action amounted to prosecutorial misconduct. Therefore, the trial court did not error in refusing to grant Tharp's motion to dismiss based on prosecutorial misconduct.

### B. Motion for Depositions

#### i. Rule 4–261

As for the motion for depositions, Tharp maintains that he should have been provided with the opportunity to depose the witnesses as justice, due process, and fundamental fairness dictate. We conclude, however, that the Court of Special Appeals was correct in affirming the trial court's denial of depositions. We further agree with the Court of Special Appeals that the trial court's actions did not violate fundamental fairness and due process of law.

Maryland Rule 4–261 controls when, in criminal cases, depositions may be ordered. In the circuit courts in criminal cases, depositions are available when:

the parties ... agree, without an order of court, to take a deposition of a witness, subject to the right of the witness to move for a protective order under section (g) of this Rule. Without agreement, the court, on motion of a party, may order that the testimony of a witness be taken by deposition if satisfied that the witness may be unable to attend a trial or hearing, that the testimony may be material, *and* that the

taking of the deposition is necessary to prevent a failure of justice.

Md. Rule 4–261(b) (emphasis added). According to the Rule, which is expressed in the conjunctive, depositions may be ordered on the motion of a party as long as each of the following three situations is present: (1) the witness will be unable to attend the trial or hearing; (2) the testimony may be material; and (3) the deposition is necessary to achieve justice. *See* Md. Rule 4–216(b). If the rule had been written in the disjunctive, only one of the above three situations would need to be demonstrated to trigger the court's discretionary authority whether to grant a motion for depositions. As none of the three situations are present in this case, the trial court pellucidly was correct in not granting Tharp's motion for depositions.

█ First, Tharp's attorney wanted to depose persons who would be testifying at Tharp's trial, not those who would be unable to attend the trial, as Rule 4–261 contemplates. By requiring that if depositions are to be taken they be of those witnesses unable to attend trial, the Rule implies that the depositions are for the introduction of evidence at trial and not for mere discovery or trial preparation, as was Petitioner's intended use of the depositions in this case. *See Kardy,* 237 Md. at 536–37, 207 A.2d at 90 (discussing Rule 727, the predecessor to 4–261, and remarking that the taking of depositions, in criminal cases, usually indicates that the testimony is to be reduced to writing, "in due form of law, by virtue of a commission or other authority of a competent tribunal, or according to the provisions of some statute law, to be used on the trial of some question of fact in a court of justice" (citation omitted)).

Second, discerning the manner of delivery of the testimony at Sellers's trial was not *material,* though it may have been *helpful.* The adjective "material" is defined by *Black's Law Dictionary* as "[o]f such a nature that knowledge of the item would affect a person's decision-making process; significant; essential." Black's Law Dictionary 991 (7th ed.1999). We

have defined a "material fact" in civil law as a fact "the resolution of which will somehow affect the outcome of the case." *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608, 614 (1985) (citing *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 8, 327 A.2d 502, 509 (1974)) (referring to Md. Rule 2–501(a)). It is logical that the same definition of materiality applies to Rule 4–261 and its phrase "the testimony may be material." Md. Rule 4–261(b). Thus, for a deposition to be taken pursuant to Rule 4–261(b), the deposition must be one that may somehow affect the outcome of the case.[19] Petitioner's attorney wanted to take the depositions so that he would be able to observe "the meaning, the credibility, and the persuasiveness of a witness's testimony," referring to those witnesses who testified at Sellers's trial and who likewise the State intended to call as witnesses at Tharp's trial. Petitioner's Br. at 17. Petitioner's attorney, however, had a transcript of Sellers's trial, and there is no indication, as the Court of Special Appeals stated, that Petitioner's attorney "was actively seeking testimony from these witnesses beyond what was revealed in Sellers's trial transcript." *Tharp,* 129 Md.App. at 342, 742 A.2d at 19. The taking of depositions was in no way essential to Tharp's case and would in no way affect the outcome of Tharp's case, particularly because his attorney had a transcript of the Sellers trial.

Petitioner cites *Corbett v. State,* 130 Md.App. 408, 746 A.2d 954 (2000), *cert. denied,* 359 Md. 31, 753 A.2d 3 (2000), in arguing that "non-verbal factors are *essential* to discerning

---

**19.** In the *ABA Standards for Criminal Justice Discovery and Trial by Jury,* the ABA provided a similar standard for depositions in criminal cases and uses the term "material" to describe those witnesses who may be deposed. AMERICAN BAR ASSOCIATION, ABA STANDARDS FOR CRIMINAL JUSTICE DISCOVERY AND TRIAL BY JURY 77, 80 (3d ed.1996) [hereinafter STANDARDS FOR CRIMINAL JUSTICE]. According to the ABA,

> [t]he use of the term 'material' in describing the witness who may be deposed provides an important limitation under the standard. This makes clear that depositions to preserve testimony are available only for those prospective witnesses whose testimony is important to some aspect of the case, and not for witnesses whose testimony is peripheral or of dubious significance.

*Id.* at 80, 593 A.2d 224.

the real import of a witness's answer" and that "one could not know whether ... [a witness] truly did not remember or was refusing to testify." Petitioner's Br., at 17–18 (emphasis added). In *Corbett,* the Court of Special Appeals, in discussing the use of prior inconsistent statements at trial, noted that the State "conced[ed] ... that from the cold record, it is impossible to determine whether ... [the witness] was being evasive in her answers or whether she was unable to answer because her memory was faulty." *Corbett,* 130 Md.App. at 426, 746 A.2d at 963.

The *Corbett* case is distinguishable from the present case. *Corbett* is about prior inconsistent statements and whether a witness's trial testimony was truly inconsistent with the witness's prior out-of-court statement. *Id.* The present case involves no such issue, and there is no question of whether witnesses testified inconsistently. In addition, as Respondent points out, Tharp's attorney "was free to talk with, and observe, any willing witness in preparation for trial." Respondent's Br. at 15. We have noted that "a defendant and his counsel are at perfect liberty to interview and interrogate prospective witnesses, subject to the witnesses' acquiescence in such interrogation." *Grandison v. State,* 305 Md. 685, 740, 506 A.2d 580, 607 (1986) (citing *Kardy,* 237 Md. at 541, 207 A.2d at 92).[20] Tharp had ample opportunity through the transcript and through the opportunity to interview prospective witnesses to put himself on equal footing with the prosecution. Thus, the need for depositions was not material and the effect of not having them was not prejudicial error that we are prepared to recognize.

Lastly, in the present case, the taking of the depositions is not necessary "to prevent the failure of justice." Md. Rule 4–

**20.** In *Kardy v. Shook,* 237 Md. 524, 541, 207 A.2d 83, 92–93 (1964), we stated:

> The defendant and his counsel are at perfect liberty, as they always have been in this State, to interview and interrogate any prospective witness, subject, of course to the witness' acquiescence in such interrogations. And the defendant and his counsel may take an affidavit from any prospective witness, if the witness be willing.

261. Tharp argues that "[j]ustice is not served when a prosecutor, for purposes of 'checkmating' defense counsel, . . . prevails upon the trial court to deny defense counsel important information about witness testimony, information which the prosecutor would obtain." Petitioner's Br. at 23–24. Again, we do not conclude on this record that the prosecution acted in bad faith. Tharp's attorney had access to the transcript of Sellers's trial. Furthermore, as the Court of Special Appeals pointed out, "the record does not disclose whether any witnesses, other than . . . Minton, testified in both trials." [21] *Tharp*, 129 Md.App. at 342, 742 A.2d at 19.

### ii. Depositions Outside of Rule 4–261

Tharp, recognizing the difficulty he confronts in trying to fit his argument into the mandate of Rule 4–261, alternatively argues that "Rule 4–261 ordinarily delineates the situations in which a deposition may be ordered in a criminal case; however, . . . this Court has recognized a court's inherent power to order forms of trial preparation in unique cases when justice requires." Petitioner's Br. at 28. Rule 4–216, however, is the only possible ground available upon which Tharp's argument could hope to gain purchase. The Court of Special Appeals noted that "[t]here is no provision in the Maryland Constitution, Maryland Rules, or statutes of this state that requires or even explicitly permits the taking of pre-trial depositions of the State's witnesses in criminal cases." *Tharp*, 129 Md.App. at 341, 742 A.2d at 18; *see Kardy*, 237 Md. at 536, 207 A.2d at 89 90 (stating that there is "no explicit authority to take pretrial depositions . . . contained in any Maryland statute or rule of court, or in the Maryland Constitution"). We agree. Additionally, we have stated that "[t]here is no inherent power in a

---

**21.** The ABA, in discussing its similarly worded standard for the taking of depositions in criminal trials, analogized the phrase "prevent a failure of justice" to FED.R.CRIM.P. 15(a) in which the taking of depositions must be in the "interest of justice." STANDARDS FOR CRIMINAL JUSTICE, *supra* note 17, at 81 n. 17. The ABA further explained that this requirement "leaves to the court's discretion, on case-by-case basis, the decision whether the requested deposition seeking to preserve a witness's testimony is necessary to the ends of justice." *Id.* at 81–82.

court of this State to direct the taking of depositions in criminal cases and whatever power exists is conferred by Rule 727 [former Rule 4–261], which derogates the common law and must be strictly construed." *State v. Collins,* 265 Md. 70, 78, 288 A.2d 163, 168 (1972) (citing *Kardy,* 237 Md. 524, 207 A.2d 83; *Young v. State,* 90 Md. 579, 45 A. 531 (1900)).

■ To argue that we should recognize some inherent ability vested in trial courts to order depositions as justice requires, outside of Rule 4–261, Tharp relies on *State v. Haas,* 188 Md. 63, 51 A.2d 647 (1947), *overruled on other grounds, In re Petition for Writ of Prohibition,* 312 Md. 280, 305, 539 A.2d 664, 676 (1988). In *Haas,* we held that trial courts have a right "to permit the defendant to examine his confession in advance of the trial." *Haas,* 188 Md. at 75, 51 A.2d at 653. In so holding, we noted that this right was not recognized by the common law, but that "law is a growth and a great many matters, commonplace to us now, were not thought of many years ago." *Id. Haas,* however, does not apply to depositions, as demonstrated by *Collins, supra,* which states that Rule 4–261 exclusively governs depositions in criminal trials. *See also Kardy,* 237 Md. at 539, 207 A.2d at 91 (stating the *Haas* opinion "did not discuss or consider anything relative to the taking of depositions"). Moreover, in *Goldsmith v. State,* 337 Md. 112, 651 A.2d 866 (1995), we maintained that even though "we have expanded the common law and given trial courts some authority to either require or permit discovery ... [,] the right to pre-trial discovery is strictly limited to that which is permitted by statute or court rule or mandated by constitutional guarantees." *Goldsmith,* 337 Md. at 122, 651 A.2d at 871 (citing *Kardy,* 237 Md. at 537, 207 A.2d at 90; CHARLES E. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 334, at 547 (13 th ed.1990)). It is clear then that trial judges have no power beyond that conferred by Rule 4–261 to order depositions in criminal trials.

Tharp also incorrectly relies on *In re United States,* 878 F.2d 153 (5th Cir.1989), *cert. denied, Noons v. United States,* 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 536 (1989) and *United*

*States v. Carrigan,* 804 F.2d 599 (10th Cir.1986), to contend that federal courts will permit trial courts to order depositions in exceptional circumstances. *Carrigan* addressed the context of a petition for a writ of mandamus by the Federal Government "seeking vacation of a pretrial order directing that defendants in a criminal action be allowed to depose particular prospective government witnesses." *Carrigan,* 804 F.2d at 601. The district court ordered that depositions be taken of witnesses who had refused to be interviewed by the defense because the prosecution had discouraged the witnesses from talking to the defense; the prosecution "at least strongly implied that the witnesses should decline the requested defense interviews, and substantially chilled these witnesses' previously expressed willingness to discuss the facts with the defense." *Id.* (internal quotation marks omitted). The U.S. Court of Appeals for the Tenth Circuit denied the petition, but with reluctance,[22] inferring that it denied the petition simply because of the high standard required for granting a petition for writ of mandamus.[23] *Carrigan,* 804 F.2d at 605. The circumstances of the present case are distinguishable from *Carrigan.*

In the present case, there is no evidence that the prosecution "substantially chilled" the witnesses so that they would

---

**22.** The *Carrigan* court stated:

> The case is not compelling for finding improper governmental interference with the defense's access to these witnesses, particularly in view of denials of government interference by the witnesses themselves. But the district court is the factfinder. Moreover, this is a petition for a writ of mandamus, requiring that we find the district court so clearly abused its discretion as to constitute usurpation of power.

*United States v. Carrigan,* 804 F.2d 599, 605 (10th Cir.1986).

**23.** The Tenth Circuit explained that a petition for a writ of mandamus should only be awarded in extraordinary circumstances; mandamus is used in federal courts ordinarily "only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Carrigan,* 804 F.2d at 602 (quoting *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (quoting *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967))).

not agree to interviews by the defense. As is noted above, the record does not suggest that Tharp's attorney was prevented from interviewing any willing witnesses. Observing a trial may be easier than interviewing the witnesses and may provide the same information as interviews, but the denial of the former does not equate to the denial of the opportunity to do the latter, particularly when Petitioner's trial attorney knew from the transcript of Sellers's trial who testified.

In *In re United States,* the U.S. Fifth Circuit Court of Appeals granted the government's petition for a writ of mandamus "directing the district court to set aside a pretrial order in a pending criminal case providing for the defense to take, ex parte, the discovery deposition of a witness." 878 F.2d at 154. The Fifth Circuit distinguished *Carrigan* by remarking that in *In re United States* there was no allegation and no evidence that the prosecution impeded the defense's ability to interview or to talk with the witness. 878 F.2d at 157. Therefore, the "key element of *Carrigan* is wholly missing." *Id.* The court also stated that the deposition order was for discovery purposes and that the rules governing depositions in criminal cases "do[ ] not authorize depositions for discovery purposes, as the authorities uniformly recognize." [24] *In re United States,* 878 F.2d at 156; *cf. supra* pp. 29–30. In the present case, similar to *In re United States,* there is no indication that the prosecution inhibited Tharp's trial attorney from interviewing or speaking with witnesses, and, as discussed, Rule 4–261 circumscribes the use of depositions in criminal trials.

Lastly, Petitioner employs *Kardy,* 237 Md. 524, 207 A.2d 83, to contend that we have stated that "constitutional provisions as well as statutory ones may be the source of authority to take depositions in criminal cases." Petitioner's Br. at 28. Petitioner, however, takes this quoted passage out of context.

---

24. According to *In re United States,* Fed.R.Evid. 15(a) controls depositions in criminal cases, and under this Rule, "[d]epositions are not discovery tools in criminal cases." 878 F.2d 153, 156 (5th Cir.1989) (internal quotation marks omitted) (quoting *United States v. Fischel,* 686 F.2d 1082, 1091 (5th Cir.1982)).

What we stated in *Kardy* was that *Young*, 90 Md. 579, 45 A. 531, was cited often for the proposition that "[d]epositions can be taken ... in criminal cases only within the limitation of the authority granted by constitutional or statutory provisions or by the concurrent consent of the accused and the prosecution." *Kardy*, 237 Md. at 538, 207 A.2d at 91 (second alteration in original). *Kardy* and *Young* address the limits upon, not the source of, the taking of depositions in criminal cases. In *Kardy*, we concluded that the criminal defendant has no constitutional right to take pretrial depositions; to find otherwise would leave Rule 727, the predecessor to Rule 4–261, without vitality. *Kardy*, 237 Md. at 542, 207 A.2d at 93; *see also Goldsmith*, 337 Md. at 126, 651 A.2d at 873 ("[I]n *Kardy*, ... this Court held that a criminal defendant has neither a state nor federal constitutional right to take the deposition of a potential witness."). Therefore, *Kardy* in no way supports the proposition that depositions in criminal trials may be taken outside of Rule 4–261, or in the interest of justice or fundamental fairness.

In sum, there was no error at Tharp's trial. Accordingly, we do not consider the Court of Special Appeals's alternative holding on the ground of harmless error.

## V.

The last matter that we comment upon serves as a reminder for the guidance of bench and bar. The reminder appears propitious, given the circumstances of the present case, so that cases such as this one may be avoided in the future. We point-out what possible relief may have been available to Tharp's trial attorney at the time he was not permitted to attend Sellers's trial.[25]

---

25. As mentioned earlier, Sellers could have argued that Petitioner's attorney's exclusion, as a member of the public, from Sellers's trial denied Sellers his Sixth Amendment (and/or Maryland Constitutional) "right to a speedy and public trial." *Walker v. State*, 121 Md.App. at 370, 709 A.2d at 180 (quoting *Cox v. State*, 3 Md.App. 136, 139, 238 A.2d 157 (1968)). The Court of Specials Appeals discussed the possible Sixth Amendment rights of Sellers in its analysis of how Petitioner's

■ Once Tharp's attorney was removed from the witness list, his status became that solely of a member of the public with regard to Sellers's trial. We have acknowledged that common law, preserved by Article 5 of the Maryland Declaration of Rights, recognizes the "public's right of open access to courtrooms." *Baltimore Sun*, 359 Md. at 663, 755 A.2d at 1136 (internal quotation marks omitted) (quoting *Colbert*, 323 Md. at 300, 305, 593 A.2d at 229, 231) (citing *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546, 1551 (1947)). For a member of the public to be removed in a criminal case from the courtroom, in effect limiting access to the proceeding to the public, the following findings must be made:

> [T]he *party* seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d 31 (emphasis added).[26]

■

attorney was a member of the public, and, thus, before his exclusion from the courtroom, the trial court should have made certain findings. *Tharp v. State*, 129 Md.App. 319, 339–41, 742 A.2d 6, 17–18 (1999). The Court of Special Appeals, however, failed to recognize that as a member of the public, Petitioner's attorney had a right to attend a public trial-a right which he could have raised himself.

**26.** The same findings should be made whether the defendant or the press or public is questioning the closure of the courtroom. We stated:

> The *Waller* Court noted that the express rights of a defendant under the Sixth Amendment were at least as extensive as the implied rights of the public and press under the First Amendment, and thus applied the same test as the Sixth Amendment challenge to closure. *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). Under present law, therefore, whether objection to closure is made by the defendant or the press, the public may only be constitutionally excluded from a trial, including voir dire, pursuant to a narrowly tailored order necessary to protect an overriding state interest.

*Watters*, 328 Md. at 45, 612 A.2d at 1291; *see also Carter v. State*, 356 Md. 207, 217–18, 738 A.2d 871, 876 (1999) (providing the same passage).

■ We laid out the procedure in *Baltimore Sun Co. v. Colbert, supra,* that a member of the public or press should employ to seek redress when a criminal proceeding is closed to them. While we reemphasize the avenues open to the public and press who believe they wrongly have been denied their right to access to criminal trials, we do not speculate as to what would have happened had Petitioner's trial attorney taken this path.[27] As we stated above, "criminal trials are presumptively open to the public" as guaranteed by the First and Fourteenth Amendments. *Colbert,* 323 Md. at 297–98, 593 A.2d at 227; *see Richmond Newspapers, Inc.,* 448 U.S. at 573, 100 S.Ct. at 2825, 65 L.Ed.2d 973 (chronicling the history of criminal trials being open to the public and finding "that a presumption of openness inheres in the very nature of a criminal trial under our system of justice"); *Richmond Newspapers Inc.,* at 577, 100 S.Ct. at 2827, 65 L.Ed.2d 973 ("The right of access to places traditionally open to the public, as criminal trials have long been, may be seen as assured by the amalgam of the First Amendment guarantees of speech and press . . . ."). As such, the press and the public should only be excluded from criminal proceedings "in limited and unusual circumstances." *Colbert,* 323 Md. at 300, 593 A.2d at 228. If they are excluded, however, they should be given the opportunity "to be heard on the question of their exclusion." *Colbert,* 323 Md. at 300, 593 A.2d at 228–29 (internal quotation marks omitted) (quoting *Globe Newspaper Co.,* 457 U.S. at 609 n. 25, 102 S.Ct. at 2621 n. 25, 73 L.Ed.2d 248 (quoting *Gannett Co.,* 443 U.S. at 401, 99 S.Ct. at 2916, 61 L.Ed.2d 608 (Powell, J. concurring))).

■ To ensure that the excluded press and public are properly heard, the following procedure should be followed. Ordinarily, the public and the press are excluded from a criminal proceeding pursuant to a party's motion to close the

27. We will not conjecture as to what would have happened had Petitioner's attorney raised this issue when he was denied access to the courtroom. *Cf. Carter,* 356 Md. at 221, 738 A.2d at 878 ("An appellate court may not provide a post hoc rationale for why the trial judge would have closed the trial had it held a hearing and made findings.").

courtroom to the public; once this motion is made, the public can assert its right of access. *Colbert*, 323 Md. at 300, 593 A.2d at 229.

After the motion, the "court should provide individuals opposing closure an opportunity to object and to state the reasons for that opposition before ruling on the closure motion." *Id.* (citations omitted). To ensure that the public properly can object to the closure motion, the motion ordinarily should be docketed "in advance of the time of the hearing to provide notice to afford an opportunity to oppose the closure motion, as well as to present alternatives to closure." *Id.* If giving prior notice is impracticable, however, as in the present case, "those present in the courtroom should be informed that closure is sought, that they have a right to oppose closure, and will be afforded a reasonable opportunity to do so." *Colbert*, 323 Md. at 301, 593 A.2d at 229. The trial court then should make the findings discussed in *Waller*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d 31.[28] In so doing, the trial court should take into consideration that

> [t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press–Enterprise Co.*, 464 U.S. at 510, 104 S.Ct. at 824, 78 L.Ed.2d 629. At this point, the trial court makes a ruling on the motion.

*JUDGMENTS AFFIRMED, WITH COSTS.*

RODOWSKY, RAKER and WILNER, JJ., concur.

---

**28.** See *Baltimore Sun Co. v. Colbert*, 323 Md. 290, 303, 593 A.2d 224, 230 (1991), for further explanation of the how the standard itself is to be applied.

RAKER, Judge, concurring:

I concur in the judgment only because I believe that the trial court committed no error in this case. Edward Barry, Tharp's counsel, was listed as a witness on the defense witness list and was *never* removed from the list as a potential witness.

The majority concludes that the trial court "erred from the inception in not inquiring further or not recognizing that Tharp's attorney had been redacted from the witness list . . . and thus was no longer subject to Rule 5–615." Maj. op. at 105. I disagree. I do not think it apparent that Seller's attorney intended to redact his witness list and, if that is what he intended to do, he need only have said so. The record in this case indicates that the prosecutor, as well as the trial judge, continued to believe that Mr. Barry remained on the list. Inasmuch as the rule mandates sequestration if the request is made before testimony commences, under the circumstances presented herein, the trial court properly sequestered Mr. Barry.

Judge WILNER has authorized me to state that he joins in the views expressed in this concurring opinion.

RODOWSKY, Judge, concurring.

I join in the judgment of the Court substantially for the reasons set forth in Part IV of the Court's opinion. Even if the trial court in Sellers' case should not have excluded Petitioner's counsel, the right infringed was that of Sellers or of Tharp's attorney, personally. The exclusion, if wrongful, was not an error in Tharp's trial.