# CLARENCE HARRIS JOHNSON *v.* STATE OF MARYLAND

[No. 151, September Term, 1977.]

*Decided July 17, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Victoria A. Salner, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold the Court of Special Appeals correctly determined that the provisions of former Maryland Rule 753 (now Rule 755) relative to sequestration of witnesses is mandatory and that there is no exception in it for a principal investigator. We shall further hold, however, that it erred in determining that a violation of Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 27, § 230A (welfare fraud) merged into a violation of Code (1957, 1971 Repl. Vol., 1972 Cum. Supp.) Art. 27, § 140 (false pretenses), rather than vice versa.

Appellant, Clarence Harris Johnson (Johnson), was convicted by a Baltimore City jury of false pretenses and welfare fraud and of conspiracy to commit those offenses.

At the beginning of the trial defense counsel moved for sequestration of witnesses. Rule 753, applicable to this proceeding, stated in pertinent part, "The court ... shall, upon the request of a party, order that the witnesses be excluded from the courtroom until called upon to testify," with the only exception being for an expert witness "who is to render an opinion based on the testimony given at the trial...." [1] The presence of Detective John Heddinger at the counsel table was noted in the motion for sequestration. The trial judge inquired of the prosecutor as to whether

---

1. The provision currently applicable is Rule 755.

Heddinger was "the principal investigator" in the case. When an affirmative response was received, he said:

> "Well, I think they are entitled to keep the principal investigators in the courtroom with them. That has been ruled on many times, that the principal investigator in the case, in this type of case, can remain in the courtroom."

The defense renewed its objection when Heddinger was called as a witness. The trial judge replied that since he understood Heddinger to be "the principal investigator in this case," that "under the rules he [was] entitled to remain in the courtroom under all the cases that [he] kn[e]w of."

The Court of Special Appeals in an unreported opinion (No. 185, September Term, 1977, filed November 16, 1977) determined that although there was an error on sequestration, "the record discloses no prejudice." It further held that the convictions of welfare fraud merged into those of false pretenses and thus reversed the welfare fraud convictions.

## 1. Sequestration

In 6 J. Wigmore, *Evidence* § 1837 (J. Chadbourn Rev. 1976), it is stated at the beginning, "The expedient of *separating a party's witnesses,* in order to detect falsehood by exposing inconsistencies, seems to have been early discovered and long practiced in various communities." (Emphasis in original.) He said that "its age and universality have come to be more emphasized in our own legal annals because of the instance recorded and handed down in the apocryphal Scriptures," referring to "[t]he story of Daniel's judgment in Susanna's case" as recorded in *The History of Susanna,* vv. 36-64 (Apocrypha).

Such a procedure was set up by statewide rule in Maryland when our predecessors adopted General Rules of Practice and Procedure, Part Four I, Rule 8 effective January 1, 1950. *See* the explanation of the rule appearing in *The Daily Record,* December 19, 1949. The practice was well known in Maryland,

however. *See, e.g., Jones v. State,* 185 Md. 481, 487-89, 45 A. 2d 350 (1946), and *Parker v. State,* 67 Md. 329, 10 A. 219 (1887).

Judge Horney pointed out for the Court in *Swift v. State,* 224 Md. 300, 306, 167 A. 2d 762 (1961), that although under our prior rules the sequestration of witnesses rested within the discretion of the trial court, "the granting of a request to exclude witnesses is now obligatory and is no longer discretionary." *Accord, Brown v. State,* 272 Md. 450, 477, 325 A. 2d 557 (1974). There simply is no provision in the rule for an exception for a principal investigator.[2] It therefore follows that the trial judge erred.

---

2. The Maryland rule thus is in sharp contrast with Fed. R. Evid. 615 which specifies that the "rule does not authorize exclusion of (1) . . . , (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause." J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 615 [01] at 615-7 (1977) states, "The second category is in accord with previous practice; judges routinely permitted the agent in charge of a criminal investigation to remain in court to advise the government." Am. Jur.2d *Federal Rules of Evidence* § 615.2 (1975) states:

> "Many District Courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in — he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty. Yet it would not seem that the government could often meet the burden, under Rule 615, of showing that the agent's presence is essential. Furthermore, it could be dangerous to use the agent as a witness as early in the case as possible, so that him then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal. Using another, nonwitness agent from the same investigative agency would not generally meet government counsel's needs. The Senate Committee believes that this problem is solved if it is clear that investigative agents are within the group specified under the second exception made in Rule 615, for 'an officer or employee of a party which is not a natural person designated as its representative by its attorney.' It is the understanding of the Senate Committee that this was the intention of the House Committee. In any event, such an intention is certainly the Senate Committee's construction of the Rule." *Id.* at 81 (footnote omitted).

The trial judge may well have had the federal practice in mind when he ruled.

As Judge O'Donnell pointed out for the Court in *Brown,* 272 Md. at 477, "[t]he purpose of the rule and its civil counterpart (now Maryland Rule 536) is to prevent a prospective witness from being taught or prompted by the testimony of another." *Accord, Burton v. State Roads Comm'n,* 251 Md. 403, 404, 247 A. 2d 718 (1968); *State Roads v. Creswell,* 235 Md. 220, 226, 201 A. 2d 328 (1964); and *Bulluck v. State,* 219 Md. 67, 70-71, 148 A. 2d 433 (1959). It is in that light that we must review this case to determine the effect of the error of the trial court. Under our holding in *Dorsey v. State,* 276 Md. 638, 659, 350 A. 2d 665 (1976), reversal is mandated unless we determine the error to have been harmless beyond a reasonable doubt. This standard was refined in *Ross v. State,* 276 Md. 664, 350 A. 2d 680 (1976), where Judge Levine said for the Court:

> "[W]e have just held that where the accused has demonstrated that error existed at trial, reversal of the conviction is required unless the state can show beyond a reasonable doubt that the error did not contribute to the conviction. The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded."
> *Id.* at 674.

We have meticulously reviewed the evidence in this case. The agreed statement of facts submitted by the parties to this Court pursuant to Rule 828 g contains nothing more favorable to Johnson than that appearing in his brief in the Court of Special Appeals. Since, however, the statement of facts in his brief was prepared on his behalf and thus is presumed to contain everything favorable to his point of view, we shall make use of it freely in setting forth the gist of the evidence.

The State opened its case with a succession of witnesses from the Department of Social Services. Velma Rainey, manager of one of the offices of that agency, said that

Johnson had worked at that agency for five years and since 1971 had been assigned to the income maintenance unit which authorizes payments for "clients," the social worker term for welfare recipients. Applications for monetary assistance were made out by workers such as Johnson on behalf of a client. Applicant's names are cleared through a central file system to make certain that the prospective client is not already receiving assistance. During her testimony she was shown check delivery slips made out to "Helen Hooper" and "Ella Dove" which were marked for identification.

Ruth Johnson said that she had been the supervisor of Johnson's supervisor since 1974. She explained the procedure for "one time only" grants to a client, as distinguished from regular monthly payments which are mailed out.

Marian Williams was Johnson's supervisor beginning in 1974. During her testimony certain payment authorizations were marked for identification.

Anthony Bittings, an accountant, testified that he supervised a group of clerks who issued what they term as "payroll checks," referring to checks to welfare recipients. He explained the regular checks and the one time only checks. He further explained a form by which a worker indicates whether checks are to be mailed or delivered. Through him a group of cancelled checks were marked for identification.

Carolyn Alexander, a clerk, testified that in 1974 she worked with a section of the Department of Social Services which handled lost or stolen checks. In the early part of 1975, at the request of Detective Heddinger, she removed from microfilm certain forms that were stored there, a payment authorization for Ella Dove and money requests for Helena Hooper, Eva Hairston, Carla Robinson, and Mattie Klease. These exhibits were admitted into evidence.

Sadie Vaughn, Johnson's admitted accomplice, testified that she rented a room in her home to Johnson which he used occasionally, and that she and he "had these checks going," an idea emanating from Johnson. She said some checks were brought by Johnson to the house, some were mailed there, and some were picked up by her in person. She cashed the checks at different branches of Union Trust Company, using

identification supplied by Johnson. None of the checks were made out to her. The money was divided between them. She was shown checks made out to Helena Hooper, Ella Dove, Sarah T. Rice, Sheila Taylor, Carla Robinson, Eva Hairston, and Mattie Klease. She indicated that it was she who had signed the names of the parties on the back of most of those checks. She also had signed the name Helena Hooper on some of the delivery slips which had been marked for identification when Velma Rainey testified.

Rudolph Vaughn, Sadie Vaughn's son, said that he met with Johnson after his mother was arrested, asking what Johnson was going to do about it. Johnson gave him $50 toward a lawyer on one occasion. Once while intoxicated Johnson suggested that Rudolph Vaughn go to Virginia and send a letter back to the State's Attorney's office, pretending to be "Sarah Dove, or whoever it was that was on one of th[o]se checks."

Verna Squirrel, assistant manager of a Union Trust Company branch, testified that she knew Johnson as a customer at her bank. She knew Sadie Vaughn as "Miss Dove" or "Miss Wright," who came to the bank every month to cash her check.[3] Squirrel approved it. Once Mrs. Vaughn came into the bank with Johnson. Miss Squirrel said she suspected that Miss Dove and Miss Wright were the same person but she did not know this for certain until she was contacted by Detective Heddinger and compared pictures of "Miss Wright" and "Miss Dove" that had been taken by the bank's camera.

Heddinger was the last witness called by the State. He obtained from the Director of the Department of Social Services checks in the names of Mattie J. Klease, Ella Dove, and Helena Hooper and then went to the various banks where the checks had been cashed. In the course of his investigation he met Miss Squirrel. After talking to her he returned to the Department of Social Services and obtained checks in the

3. Johnson's brief in the Court of Special Appeals and the agreed statement of facts in this Court refer here to "Wright" as does the transcript. There are no exhibits in the name of Wright but there are of "Sarah T. Rice," which makes us suspect a stenographer's error which has been compounded.

names of Sheila Taylor, Carla Robinson, Eva Hairston, and Sarah T. Rice. He also obtained from Carolyn Alexander payment authorizations in the names of Hairston, Robinson, Hooper, Klease, Rice, and Dove.

On September 6, 1974, Heddinger took a written statement from Johnson after first advising him of his rights, which statement was admitted into evidence. Heddinger testified that he had conducted a surveilance upon Johnson and had once seen him drive up to the home of Mrs. Vaughn, enter, and then leave about 20 minutes later. Heddinger also said that he had received two letters with Virginia postmarks, purportedly from one of the welfare recipients under investigation. He further testified that the authorization forms for all of the checks under investigation bore the name of "C. Harris Johnson."

From that summary of evidence we conclude that the error of the trial court was harmless beyond a reasonable doubt, in no way contributing to the conviction. For the error to have contributed to the conviction, it would have been necessary for Heddinger to have been "taught or prompted" by the testimony which he heard. There is no way in which that prior testimony could have been helpful to Heddinger in his testimony.

### 2. Merger

The matter of merger has recently been fully discussed for this Court by Judge Eldridge in *Newton v. State,* 280 Md. 260, 373 A. 2d 262 (1977). The test for determining whether two offenses merge was there set forth:

> "Thus, under both federal double jeopardy principles and Maryland merger law, the test for determining the identity of offenses is the required evidence test. If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited." *Id.* at 268.

There is at least a suggestion here that because false pretenses carries a potential punishment of 10 years imprisonment while the maximum imprisonment for welfare fraud is three years that this in some fashion makes false pretenses the greater crime into which welfare fraud would merge. This concept was rejected by the Court in *Flannigan v. State,* 232 Md. 13, 19, 191 A. 2d 591 (1963). The issue there before the Court involved Art. 27, § 140, the False Pretense Act, and § 142, the Worthless Check Act, the latter of which provided the lesser sentence.

In this case § 140 requires proof that an individual by a false pretense has "obtain[ed] from any other person any chattel, money or valuable security, with intent to defraud any person of the same...." However, § 230A requires proof of the fraudulent obtention of certain specific things, "money, property, food stamps, medical care or other assistance to which [that person] is not entitled...." Moreover, there are additional things to be established, namely that these items were obtained "under a social, health, or nutritional program based on need" and that those programs were "financed in whole or in part by the State of Maryland, and administered by the State or its political subdivisions...." Since § 230A "requires proof of a fact which [§ 140] does not," it follows that "the offenses are deemed the same, and separate sentences for each offense are prohibited." The sentence must be under § 230A, which provides the lesser penalty. Thus, the Court of Special Appeals erred.

> *Judgment of the Court of Special Appeals affirmed in part and reversed in part and case remanded to that court for further remand to the Criminal Court of Baltimore for further proceedings consistent with this opinion; costs to be divided equally between the appellant and the Mayor and City Council of Baltimore.*