*Fred Cromartie v. State of Maryland*, No. 31, September Term, 2024.

**EVIDENCE – MARYLAND RULE 5-615 – EXCLUSION OF WITNESSES – DESIGNATED REPRESENTATIVE OF A PARTY THAT IS NOT A NATURAL PERSON – HARMLESS ERROR**

Upon the request of a party made before testimony begins, Maryland Rule 5-615(a) requires the court to exclude witnesses from the courtroom while other witnesses are testifying, subject to certain exceptions. Subsection (b)(2) of the rule excepts from exclusion the designated representative of a party that is not a natural person. Here, the Court need not resolve whether the circuit court erred in permitting the State to designate as its representative a detective who would be a witness in the trial because any such error was harmless beyond a reasonable doubt under the circumstances.

**EVIDENCE – RULE 5-701 – LAY OPINION TESTIMONY – PRESERVATION**

The appellant's appellate argument that a witness's testimony identifying persons shown on a video of an altercation was improper lay opinion testimony was not preserved because the identity of those individuals was not in dispute and had already been established, including by defense counsel. Additionally, after objecting to one answer by the witness, defense counsel neither requested a continuing objection nor objected to equivalent subsequent questions and answers.

IN THE SUPREME COURT

OF MARYLAND

No. 31

September Term, 2024

_____

FRED CROMARTIE

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: April 28, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case concerns two Maryland rules of evidence. The first, Rule 5-615, sometimes called the "rule on witnesses," governs the exclusion of witnesses from the courtroom while other witnesses testify. Subsection (b)(2) of the rule excepts from the exclusion—and thus allows to be present in the courtroom while other witnesses testify— an officer or employee designated as the representative of a party that is not a natural person. In this case, we are asked to decide whether the rule allows the State to designate as its representative in a criminal prosecution a detective who will testify at the trial. Ultimately, we do not resolve that question because under the circumstances of this case any error in the application of the rule was harmless beyond a reasonable doubt.[1]

The second rule at issue, Rule 5-701, governs the admission of lay opinion testimony. The appellant, Fred Cromartie, argues that the circuit court erred in permitting the detective who testified at his trial to offer improper lay witness identification testimony. We do not resolve that question here because Mr. Cromartie did not preserve it. Accordingly, we will affirm the Circuit Court for Anne Arundel County on both issues.

## BACKGROUND

A jury convicted Mr. Cromartie of second-degree assault and other offenses arising from an altercation that took place in a parking lot near the entrance to an apartment building. The altercation, which included an exchange of gunfire, was recorded by two

---

[1] In addition to their statutory interpretation arguments, the parties' briefs raised policy considerations that are best addressed in the Court's rulemaking capacity. As a result, the Court will ask the Standing Committee on Rules of Practice and Procedure to consider whether to recommend any changes to Rule 5-615.

surveillance cameras. One camera had a view of the entrance to the building, and areas just inside and outside of the building, including part of the parking lot (the "entrance video"), and the other had a view of the parking lot (the "parking lot video"). The State alleged that Mr. Cromartie was one of the shooters and charged him with various violent and firearm-related offenses. Mr. Cromartie's theory at trial was self-defense.

On the first day of trial, soon after proceedings began, the defense invoked Rule 5-615, thereby excluding non-excepted witnesses from the courtroom during the testimony of other witnesses. Before opening statements, the prosecutor designated Detective Courtney Moore, the primary investigator of the underlying incident and a State witness, as the State's representative. Over a defense objection, the court permitted the designation, thus allowing Detective Moore to sit at the State's counsel table during the trial.

The jury heard testimony from only two witnesses. The first, Jalen Hayes, was one of the four individuals involved in the altercation. On direct examination, Mr. Hayes testified that Mr. Cromartie, who he knew by a nickname, was one of the parties involved, and he made an in-courtroom identification of Mr. Cromartie. Mr. Hayes also authenticated the parking lot video, which was played during his testimony. He identified the individuals depicted in the video, including himself, Mr. Cromartie, Demonte Smith, and another person he referred to as "Sam." Mr. Hayes then narrated parts of the video, which depicts Mr. Cromartie pointing a gun at the individual Mr. Hayes identified as Mr. Smith, Mr. Smith obtaining a gun from one of the two other individuals present, and Mr. Cromartie and Mr. Smith exchanging gunfire, all while the four individuals moved

2

around the parking lot. In addition to narrating the video, Mr. Hayes testified about words exchanged during the altercation, his relationship to some of the individuals involved, his actions relating to the altercation, and his history of drug-related convictions.

Defense counsel cross-examined Mr. Hayes about his criminal record, details of what he witnessed, and his relationship to the other parties involved. During cross-examination, the defense introduced the entrance video. Defense counsel guided Mr. Hayes through the events captured on that video, which shows part of a scuffle in the apartment's entrance that preceded the events shown in the parking lot video and most of the events caught on the parking lot video from a different angle. At several points, defense counsel identified both Mr. Cromartie and Mr. Smith by name when referring to individuals shown in the video. Defense counsel also questioned Mr. Hayes about Mr. Smith's history of dealing drugs.

The State called Mr. Smith as its second witness. However, Mr. Smith invoked his Fifth Amendment right and did not testify.

The State then called Detective Moore, who testified about his investigation of the altercation and his visit to the crime scene. After authenticating the crime scene sketch, which depicted the area outside the apartment building where the altercation had occurred, he pointed out where different actions shown in the video transpired and where bullet casings and other physical evidence were found by law enforcement.

In questioning, the prosecutor asked Detective Moore to identify what part of the sketch represented the area in which a particular event had occurred. In the course of

answering, Detective Moore referred to a "he" who was being "chased" in the video. When the prosecutor asked Detective Moore to "use the names of the individuals," the following exchange ensued:

> [Detective Moore]: So, when Mr. Smith was being chased --
>
> [Defense counsel]: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> [Defense counsel]: Your Honor, may we approach?[2]
>
> THE COURT: I'm going to sustain that because -- no, I'm going to overrule that. He was present when the video was shown, when the witness indicated who was on the video; so, overruled.
>
> [Defense counsel]: It's to the characterization, Your Honor.
>
> THE COURT: All right. Jury will make their own decision as to whether someone was chased or not.
>
> [Defense counsel]: Thank you, Your Honor.
>
> THE COURT: Okay. But he saw the video with everyone else; so, I'm going to allow him to do that, okay?
>
> [Defense counsel]: Thank you, Your Honor.

The defense neither requested a continuing objection nor objected to any of the prosecutor's subsequent questions that used the names of Mr. Smith and Mr. Cromartie and characterized their actions during the altercation. Detective Moore then authenticated several crime scene photographs, as well as shell casings and bullet fragments recovered from the scene.

---

[2] It appears that the parties did not approach the bench and that the remaining dialogue occurred in open court. In other portions of the transcript where the parties approached the bench, the transcript expressly states that they did so.

On cross-examination, Detective Moore testified further about the crime scene sketch and physical evidence collected at the scene. He confirmed that he had viewed both the entrance and the parking lot videos before trial and testified about his interpretation of the events in the videos. In questioning, defense counsel consistently identified the individuals in the videos, including Mr. Smith and Mr. Cromartie, using their names.

The jury convicted Mr. Cromartie of second-degree assault, possessing a firearm after a disqualifying crime, and carrying a loaded handgun. It acquitted him of other crimes, including first-degree assault. Before review by the Appellate Court of Maryland, this Court granted Mr. Cromartie's petition for a writ of certiorari to decide (1) whether Rule 5-615(b)(2) allows the State to designate a representative in a criminal prosecution, thereby excepting that representative from witness sequestration, and (2) whether Detective Moore's testimony constituted an impermissible lay opinion under Rule 5-701. For reasons we will discuss, we do not reach the merits of either question.

## DISCUSSION

## I

Rule 5-615 requires that "upon the request of a party made before testimony begins, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Md. Rule 5-615(a). A court "may" also order exclusion of a witness "on its own initiative" or at a party's request "at any time." *Id.* The general purpose of witness sequestration is to prevent witnesses from being taught or prompted by each other's testimony. *Tharp v. State*, 362 Md. 77, 95 (2000); *Bulluck v. State*, 219 Md. 67, 70-71

(1959).  "[I]ts application avoids an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony; it may also avoid the outright manufacture of testimony."  *Redditt v. State*, 337 Md. 621, 629 (1995) (quoting *Hurley v. State*, 6 Md. App. 348, 351-52 (1969)).

Subsections (b) and (c) of the rule except certain individuals from exclusion, reflecting other considerations that counterbalance the rule's general purpose in six circumstances.  At issue here is the second exception in subsection (b):  "A court shall not exclude pursuant to this Rule . . . an officer or employee of a party that is not a natural person designated as its representative by its attorney[.]"  Md. Rule 5-615(b)(2).

The parties raise a number of disputes concerning that exception and its applicability to this case, including:  (1) whether the exception applies to the State in a criminal prosecution; (2) if so, whether the exception is discretionary or mandatory; (3) if discretionary, whether the circuit court abused its discretion in this case; and (4) whether any error or abuse of discretion by the circuit court was ultimately harmless beyond a reasonable doubt.[3]  We do not need to resolve the first three questions today because any error or abuse of discretion by the circuit court in allowing the State to designate Detective Moore as its representative was harmless beyond a reasonable doubt.[4]

---

[3] An additional point of dispute raised for the first time at oral argument is whether a local law enforcement officer, such as Detective Moore, qualifies to be the State's designated representative for purposes of Rule 5-615(b)(2).

[4] As stated in note 1, the Court has determined that the policy considerations raised in the parties' arguments are best addressed in the Court's rulemaking capacity. Accordingly, the Court will ask the Standing Committee on Rules of Practice and

6

"[U]nless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated." *Dorsey v. State*, 276 Md. 638, 659 (1976). The burden is on the State to show that the error was harmless beyond a reasonable doubt. *Perez v. State*, 420 Md. 57, 66 (2011). The harmless error doctrine applies to errors made in determinations regarding witness exclusion. *See Johnson v. State*, 283 Md. 196, 200-03 (1978); *see also Bulluck*, 219 Md. at 70-71.

We naturally consider the extent of an error's resulting effect on the jury in light of the result the applicable rule was crafted to promote or, as here, prevent.[5] As noted, the general purpose of witness sequestration is to maintain the integrity of witness testimony. *See Tharp*, 362 Md. at 95. The rule facilitates the search for truth at trial by eliminating one possible source of unreliability. *See Safeway Stores, Inc. v. Watson*, 317 Md. 178, 181 (1989). So "[f]or the error to have contributed to the conviction, it would have been necessary for [the witness] to have been 'taught or prompted' by the testimony which he heard." *Johnson*, 283 Md. at 203. We therefore consider whether the State has shown, beyond a reasonable doubt, that Detective Moore's testimony was not improperly informed

---

Procedure to consider whether to recommend any changes to Rule 5-615, including to determine whether Rule 5-615(b)(2) should apply to law enforcement officers called as witnesses by the State in criminal cases. For that reason as well, we conclude that it is appropriate to resolve this issue by addressing only harmless error.

[5] That is not to say that harms other than those this rule was meant to prevent could not be raised or cognizable in another case. But there is no such indication in this record.

7

by, or improperly used to rehabilitate, other testimony he heard before he testified in a way that could have influenced the jury's verdict. The State has met its high burden here.

Our decision in *Johnson* is informative. There, in concluding that an error made under a predecessor to Rule 5-615 was harmless, we reviewed the testimony of all eight witnesses who were called before the State's final witness (also a detective) in a welfare fraud and conspiracy case. *Johnson*, 283 Md. at 200-03. The witnesses consisted of coworkers, welfare and banking professionals, and a family member, each of whom told a piece of the story of the defendant's fraudulent activities. *Id.* We then reviewed the testimony of the detective, who was called last, about his investigation. *Id.* at 202-03. After meticulously reviewing the testimony of each witness, we concluded that the detective-witness's testimony was not "taught or prompted" by any of the testimony he heard and that the error therefore "in no way contribut[ed] to the conviction."[6] *Id.* at 203.

The outcome here is even clearer than in *Johnson*. Only one witness—Mr. Hayes—preceded Detective Moore's testimony. The testimony of those two witnesses did not overlap in any meaningful sense. Mr. Hayes's testimony primarily concerned his role and

---

[6] Our decision in *Bulluck* is similarly instructive. There, the defendant requested sequestration of all witnesses "before he was called upon to stand and plead." 219 Md. at 70. Despite the request, he was arraigned before the witnesses were sequestered. *Id.* On appeal, this Court noted that the prosecuting witness's testimony could not have been taught or prompted by having seen the arraignment because the witness "could not testify that the accused was the man who attacked her, she could say only that he closely resembled the man who did, which is what she had said earlier of his photograph which she picked from police files." *Id.* at 71. We therefore found "no prejudicial error" from the denial of sequestration. *Id.*

8

observations as an involved party and witness to the events in the videos. He was thus able to authenticate the videos and formally identify Mr. Cromartie, as well as other individuals in the footage. By contrast, Detective Moore's role as a witness was to describe his investigation of the incident; authenticate the crime scene sketch, photo evidence, and physical evidence recovered at the scene; and explain the relationship between those pieces of evidence and the locations and events captured on the video. Although Detective Moore identified Mr. Smith by name and responded to questions identifying other participants in the altercation by name, that was based on his pre-trial investigation that led to the charges against Mr. Cromartie.[7] Simply put, the transcript does not contain any hint that Detective Moore's testimony was improperly informed by, or improperly used to rehabilitate, Mr. Hayes's testimony.

Mr. Cromartie also advances the more creative argument, which he did not present to the trial court, that Detective Moore's designation as a representative was not harmless because his inherent credibility as a law enforcement officer meant that his presence at the

---

[7] Mr. Cromartie first made a general objection to Detective Moore's answer: "So, when Mr. Smith was being chased . . . ." After that was initially overruled, he specified that his objection went to "characterization," presumably referring to Detective Moore's use of the phrase "being chased." On appeal, Mr. Cromartie contends that his original general objection incorporated his current contention that Detective Moore had offered improper lay opinion identification testimony. Regardless, the trial court seems to have understood the objection to relate to Detective Moore's use of Mr. Smith's name when it ruled on that objection, stating: "[Detective Moore] was present when the video was shown, when [Mr. Hayes] indicated who was on the video; so, overruled." We discuss that ruling further in Part II. Nevertheless, given Detective Moore's role as the investigating detective, it is apparent that Mr. Hayes's testimony in court was not the basis for Detective Moore's use of names in describing the crime scene.

9

State's counsel table bolstered the prosecution's case. That argument does not pass muster on this record.

As an initial matter, Mr. Cromartie cites no authority for the proposition that a purpose of witness sequestration is to reduce or eliminate credibility concerns arising from witness-party associations. The rule excludes witnesses from the courtroom during the testimony of other witnesses. It does not prohibit witnesses from associating with parties in view of the jury. Moreover, Detective Moore was the investigating law enforcement officer who helped build the case against Mr. Cromartie and was the State's only witness who was not a participant in the altercation. We have not identified, and Mr. Cromartie has not pointed to, any suggestion in the record that, in the eyes of the jury, Detective Moore's presence at counsel table would have tied him or his credibility any more to the prosecution than what already came with his role.

In sum, our independent review of the record in this two-witness case reveals no instance in which Detective Moore's testimony was improperly informed by or sought to rehabilitate Mr. Hayes's testimony. And we have seen no indication that Detective Moore's presence improperly bolstered the credibility of the State's case. Consequently, we conclude that Detective Moore's exception from witness exclusion did not influence the jury's verdict here. Any error or abuse of discretion by the trial court in permitting that exception was therefore harmless beyond a reasonable doubt.

We turn next to the lay opinion issue Mr. Cromartie raises on account of Detective Moore's use of Mr. Smith's name during his testimony.

"A non-expert witness may offer opinion testimony in very limited circumstances[.]" *State v. Payne*, 440 Md. 680, 698 (2014). Rule 5-701 limits such testimony to opinions that "are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding" of other testimony or the determination of a fact in issue. The first prong establishes a "personal knowledge prerequisite." *Robinson v. State*, 348 Md. 104, 121 (1997). "Yet the act of perceiving, by itself, does not satisfy" that requirement, *id.*—to "rationally" base testimony on perception, a witness must have "the experience necessary to comprehend [the witness's] perceptions," *id.* (quoting 29 Wright & Gold, Federal Practice & Procedure: Evidence § 6254, at 133 (1997)). In some instances, then, "a foundation must be laid as to the witness'[s] personal knowledge of facts to which the observed facts are being compared." *Id.* at 122 (quoting 1 McCormick on Evidence § 12, at 46 n.22 (J. Strong ed., 4th ed. 1992)).

Mr. Cromartie suggests that the circuit court erred in applying Rule 5-701 when it overruled the defense objection to Detective Moore's answer: "So, when Mr. Smith was being chased . . . ." In addition to responding to the merits of that argument, the State contends that Mr. Cromartie did not preserve his challenge to Detective Moore's "identification" testimony under Rule 5-701. We agree with the State on preservation.

"An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent." Md. Rule 4-323(a). An objecting attorney need not offer specific grounds for the objection. *Id.* And "where the trial court does not request a statement" of such grounds, "a general objection is sufficient to preserve all grounds which may exist." *von Lusch v. State*, 279 Md. 255, 262-63 (1977); *see also Johnson v. State*, 408 Md. 204, 223 (2009). However, a general objection can transform into a specific one where the objecting party "voluntarily offers specific reasons for objecting to certain evidence." *von Lusch*, 279 Md. at 263. Moreover, if similar admissions of evidence are sought after an initial objection, "a party should object to each question or assert a continuing objection to an entire line of questioning" to preserve the issue. *State v. Robertson*, 463 Md. 342, 366 (2019). Generally, "[o]bjections are waived if, at another point during the trial, evidence on the same point is admitted without objection." *DeLeon v. State*, 407 Md. 16, 31 (2008).

As noted, Mr. Cromartie's objection at trial was to Detective Moore's answer: "So, when Mr. Smith was being chased . . . ." For purposes of this appeal, we will assume without deciding that Mr. Cromartie's objection encompassed the ground of improper lay witness identification testimony.[8] Even so, he waived that objection.

---

[8] As discussed in note 7, Mr. Cromartie did not initially identify a basis for the objection, although the trial court seems to have understood that it went to Detective Moore's use of Mr. Smith's name. The parties dispute whether Mr. Cromartie's subsequent identification of "characterization" as a basis for the objection waived other bases. In our analysis, we assume for the sake of argument that it did not waive the basis on which the court initially understood the objection, i.e., the use of Mr. Smith's name. The parties also dispute whether the trial court overruled or sustained the objection as to

First, to the extent that Mr. Cromartie's objection was to the identification of Mr. Smith in the video as a general matter, it was waived many times over. Defense counsel identified Mr. Smith by name in opening statement and several times thereafter with reference to his actions captured on the videos. Mr. Hayes also identified Mr. Smith in the videos during his testimony. Simply put, Mr. Smith's identity was not in dispute. To the contrary, Mr. Cromartie's theory of self-defense turned in part on Mr. Smith's involvement as depicted on the videos.

Second, to the extent that Mr. Cromartie's objection was to Detective Moore's ability to identify Mr. Smith on the video, as improperly adding credibility to Mr. Hayes's identification, that objection also was not preserved. Again, Mr. Smith's identity and role were not at issue. Moreover, Mr. Cromartie neither requested a continuing objection to Detective Moore identifying Mr. Smith (or any other individual) nor objected to subsequent questions identifying Mr. Smith (and Mr. Cromartie) during Detective Moore's testimony. And, during cross-examination, defense counsel expressly asked Detective Moore to identify Mr. Smith (and Mr. Cromartie) as a participant in the events depicted in the videos. Indeed, far from attempting to rebut or undermine testimony identifying those individuals, the defense embraced and emphasized it to support Mr. Cromartie's theory that he was the victim and Mr. Smith was the perpetrator.

---

"characterization" when the court stated, in front of the jury: "All right. Jury will make their own decision as to whether someone was chased or not." We need not resolve that here because Mr. Cromartie has limited his appellate arguments on this issue to whether the statement was improper lay opinion testimony as to identification.

13

Third, to the extent that Mr. Cromartie now objects to Detective Moore's testimony on the basis that the trial court's ruling allowed Detective Moore to identify Mr. Cromartie on the videos as well as Mr. Smith, he waived that argument by not objecting to a single question that was posed identifying Mr. Cromartie and his actions in the video.

Finally, even if this Court identified a preserved error under Rule 5-701 with respect to the use of the names in Detective Moore's testimony, that error would certainly be harmless beyond a reasonable doubt, for the same reasons just discussed.

Accordingly, we affirm the judgment of the Circuit Court for Anne Arundel County.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**